IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**F I L E D**

AUG 2 2 2005



MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| Delisa Ross | ) | |
| | ) | |
| Plaintiff, | ) | 04 C 6557 |
| | ) | |
| v. | ) | Judge Gottschall |
| | ) | |
| RJM Acquisitions Funding, LLC, a | ) | Magistrate Geraldine Soat Brown |
| Delaware limited liability company, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The Defendant, RJM ACQUISITIONS FUNDING, LLC ("RJM"), through its

attorneys, Messer & Stilp, a Professional Corporation, pursuant to Rule 56 of the Federal

Rules of Civil Procedure and Local Rule 56.1(a)(2) submit this Memorandum of Law in

Support of its Motion for Summary Judgment, filed contemporaneously herewith.  In

support of its Motion for Summary Judgment, Defendant states as follows:

### INTRODUCTION

This is an action against RJM, brought under the Fair Debt Collections Practices

Act ("FDCPA"), 15 U.S.C. §1692(c) and § 1692c(a)(2).  RJM is entitled to judgment as a

matter of law on Plaintiff's Complaint because RJM is entitled to the bona fide error

defense under §1692k of the FDCPA for any alleged violation of § 1692e(2)(A).  RJM is

also entitled to judgment as a mater of law because it did not violate §1692c(a)(2) since it

had no actual or imputed knowledge that Plaintiff was represented by counsel.

## APPLICABLE STATUTES

The relevant part of 15 U.S.C. § 1692e(2)(A), as cited in Plaintiff's complaint,

state as follows:

> A debt collector may not use any false, deceptive, or misleading
> representation or means in connection with the collection of any debt.
> Without limiting the general application of the foregoing, the following
> conduct is a violation of this section:
>
> * * * *
>
> (2) The false representation of-
>    (A) The character, amount, or legal status of any debt. . .

15 U.S.C § 1692(e) (West 2004).

Furthermore, the FDCPA provides as follows:

> (a)  Communication with the Consumer Generally- . . . a debt collector
> may not communicate with a consumer in connection with the collection
> of any debt
>
>    (2)      if the debt collector knows the consumer is represented by
>    an attorney with respect to such debt and has knowledge of, or can
>    readily ascertain, such attorney's name and address, unless the
>    attorney fails to respond within a reasonable period of time to a
>    communication from the debt collector or unless the attorney
>    consents to direct communications with the consumer.

15 U.S.C. § 1692c(a)(2) (West 2004).

Moreover, the FDCPA provides a specific affirmative defense which states as

follows:

> A debt collector may not be held liable in any action brought under this
> subchapter if the debt collector shows by a preponderance of evidence that
> the violation was not intentional and resulted from a bona fide error
> notwithstanding the maintenance of procedures reasonably adapted to
> avoid any such error.

15 U.S.C. § 1692k(c)

## ARGUMENT

RJM is entitled to judgment as a matter of law on both counts of Plaintiff's Complaint because: (1) Plaintiff does not have standing to bring an FDCPA claim against RJM; (2) RJM is entitled to the bona fide error defense for any alleged violation of §1692e(2)(A); and (3) RJM did not violate §1692c(a)(2) of the FDCPA.

### I.  STANDARD OF REVIEW

Summary Judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact. Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A court should grant a motion for summary judgment when the record shows that a reasonable jury could not find for the nonmoving party. *See* Wade v. Equifax, 200 U.S. Dist. LEXIS 15686, *5 (N.D. Ill. 2003).

### II.  RJM IS ENTITLED TO THE BONA FIDE ERROR DEFENSE FOR AN UNINTENTIONAL VIOLATION OF § 1692e(2)(A).

RJM went above and beyond the requirements under the FDCPA to prevent collecting on a bankruptcy account. Not only did RJM have reasonable procedures in place with the original creditor, RJM, through its agent, caused a bankruptcy search to be conducted before collecting on the account. Thus, even if RJM was attempting to collect the Debt from Plaintiff, RJM is entitled to the bona fide error defense under § 1692k of the FDCPA because any violation of § 1692e(2)(A) of the FDCPA was (1) unintentional and (2) RJM maintained reasonable procedures to avoid such violations of the FDCPA. Section 1692e(2)(A) states in pertinent part, as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general

3

> application of the foregoing, the following conduct is a
> violation of this section:
>
> * * * *
>
> (2) The false representation of-
> > (A) The character, amount, or legal status of any
> > debt;

The Seventh Circuit has held that strict liability exists for violations of §1692e(2)(A).

*See* Randolph v. IMBS, et al., 368 F.3d 726, 730 (7th Cir. 2004). In lieu of the scienter

requirement, however, the FDCPA provides a bona fide error defense. *See* 15 USC

1692k. Section 1692k(c) of the FDCPA states, in pertinent part:

> A debt collector may not be held liable in any action
> brought under this subchapter if the debt collector shows by
> a preponderance of evidence that the violation was not
> intentional and resulted from bona fide error
> notwithstanding the maintenance of procedures reasonably
> adapted to avoid any such error.

15 U.S.C. § 1692k(c)

To successfully invoke the bona fide error defense the defendant must show (1)

that the violation was unintentional, and (2) that it maintained reasonable procedures to

prevent such errors. Jenkins v. Heintz, 124 F.3d. 824, 828 (7th Cir. 1997); Hyman v. Tate,

362 F.3d 965 (7th Cir. 2004). Under a bona fide error defense, a debt collector need only

show that its FDCPA violation was unintentional, not that its actions were unintentional.

Kort v. Diversified Collection Services, 394 F.3d 530, 537 (7th Cir. 2005).

A debt collector may reasonably rely on its creditor-client not to forward accounts

for debts that are not current or authorized.   Hyman, 362 F.3d. at 968. Reasonable

procedures to avoid such errors also include a mechanism to promptly remove accounts

from the collection list where that account is mistakenly referred to collection. Id. It is

not reasonable to require a debt collector to conduct an independent investigation into the

4

validity of each debt prior to sending a collection letter. *See* Jenkins, 124 F3d at 834-35; *see also* Hyman, 362 F.3d at 968 (rejecting the argument of the current Plaintiff's counsel – Gomolinski & Philipps - that to qualify for the bona fide error defense a debt collector must review the bankruptcy records or use an online service such as "Banko"). Notwithstanding that such procedures are not required, RJM does in fact conduct bankruptcy searches before undertaking collection activity.

In *Hyman*, the plaintiff was represented by the law firm of Gomolinski & Philipps. In plaintiff's Memorandum in Support of her Motion for Summary Judgment ("Memorandum") filed in the *Hyman* case, the plaintiff argued that "[d]efendants could have determined that [the plaintiff] had filed for bankruptcy in January 2000 by searching the files of the United States Bankruptcy Court for the Northern District of Illinois, either manually or on-line via the Internet through the United States Bankruptcy Court for the Northern District of Illinois' website." *See* page 2 of the Memorandum, attached hereto as Exhibit A. The plaintiff further argued: "Finally, there are computer programs available commercially, such as "Banko", which enable a debt collector to search bankruptcy court records nationwide to determine whether a consumer has filed for bankruptcy." *See* page 7 of the Memorandum. The Seventh Circuit, however, rejected these arguments, stating ". . . [plaintiff] asserts that prior to mailing collection letters, [the debt collector] had to establish its own proactive procedure (such as checking the bankruptcy records or using the online service of "Banko") to assure that the accounts forwarded for collection were not in bankruptcy. However, the FDCPA does not required collectors to independently verify the validity of the debt to qualify for the "bona fide error" defense. *See* Hyman, 362 F.3d at 968.

In this case, RJM is entitled to invoke the bona fide error defense to defeat Plaintiff's alleged violation of § 1692e(2)(A) for three reasons: (1) any alleged violation of the FDCPA was unintentional; and (2) RJM follows the precise procedure Plaintiff's counsel argued *Hyman* was necessary to qualify for the bona fide error defense; and (3) the Seventh Circuit has found that procedure to be "overkill" and unnecessary to qualify for the defense.

## A.   RJM DID NOT INTEND TO VIOLATE § 1692e(2)(A) OF THE FDCPA.

As is clear from the exhibits to Plaintiff's Complaint, Plaintiff and Plaintiff's attorney knew when they filed the Complaint that RJM would not have received notice of Plaintiff's bankruptcy as a result of multiple negligent or intentional misrepresentations by Plaintiff and/or her bankruptcy attorney, and not RJM. First, Plaintiff listed RMA Acquisitions Funding LLC on her bankruptcy petition instead of RJM. *See* Complaint, Ex. "A". Second, Plaintiff listed Fingerhut Credit Advantage c/o Axsys National Bank on her bankruptcy petition, despite the fact that Axsys National Bank never handled the Account. *See* Complaint, Ex. "A", *see also* Defendant's Statement of Material Facts at ¶ 21. Third, and most importantly, although Plaintiff knew RJM and Plaza Associates – the collection agency retained by RJM's – were attempting to collect a debt from a *Lisa Ross* rather than Delisa Ross, Plaintiff did not list the alias of "Lisa" Ross in her bankruptcy petition. *See* Complaint, Ex. "A". Plaintiff's attorney has attempted to dismiss this crucial fact as "nothing more than a data entry error." *See* Defendant's Statement of Material Facts at ¶ 24. However, the fact that Plaintiff failed to list her alias of Lisa Ross in her bankruptcy petition is of critical importance, because it resulted in RJM's not receiving notice of Plaintiff's bankruptcy through its bankruptcy search. In

fact, RJM did not learn that the Plaintiff had filed for bankruptcy until Plaintiff's bankruptcy counsel contacted RJM directly upon Plaintiff's receipt of RJM's collection letter. *See* Defendant's Statement of Material Facts at ¶ 22.[1]

Upon learning that the Plaintiff had included the Account allegedly owed by a Lisa Ross on her bankruptcy petition, RJM immediately ceased all collection activity on the Account and closed the Account. *See* Defendant's Statement of Material Facts at ¶ 22. Thus, any violation of § 1692a(2)(A) was a result of negligent or intentional misrepresentations by Plaintiff and/or her bankruptcy attorney, and not by any intentional conduct by RJM.

## B.   RJM HAD REASONABLE PROCEDURES IN PLACE TO AVOID ANY VIOLATION OF § 1692e(2)(A) OF THE FDCPA.

RJM maintained reasonable procedures - like the defendants in *Jenkins* and *Hyman* - to avoid violating § 1692e(2)(A) of the FDCPA.  In fact, RJM's reasonable procedures go above and beyond those that the Seventh Circuit has held were reasonable in *Jenkins* and *Hyman*.  RJM had five (5) separate procedures in place to avoid violating § 1692e(2)(A) of the FDCPA.  *See* Defendant's Statement of Material Facts at ¶¶ 4-16. First, RJM had an agreement with the original creditor – Federated Department Stores ("FDS") - that FDS would not forward accounts that had been discharged in bankruptcy. *See* Defendant's Statement of Material Facts at ¶ 5.  Second, FDS also agreed that it if it

---

[1] Plaintiff's attorney's knowledge that RJM would not have received notice of Plaintiff's bankruptcy is important because it shows a pattern of litigation abuse whereby Plaintiff's attorney files illegitimate lawsuits against collection agencies.  In a case factually similar to this one, in *McComb v. Plaza*, United States District Court Case No. 03 C 7988, the current Plaintiff's counsel filed a lawsuit claming that the defendant had attempted to collect a debt that had been discharged in bankruptcy by a Russel McComb, In reality, however, the defendant was attempting to collect a debt from the plaintiff's son, who had the same name.  The son had not discharged the debt in bankruptcy.  Judge Shadur sanctioned Mr. Philipps under 28 U.S.C. § 1927, because he multiplied the proceedings unreasonably and vexatiously by *inter alia,* failing to take the obvious step of verifying that the debt Plaza was attempting to collect was different from the debt owed by the Plaintiff and by failing to follow-up through discovery requests on Plaza's explanation that it obtained the father's address for the son through a Lexis-Nexis search.

became aware of any future claims that would affect RJM, it would notify RJM. Third,

RJM maintained reasonable procedures with Plaza Associates, the collection agency it

engaged to collect on the Account, to close all accounts and cease collection on accounts

in which the collection agency learned that the debtor had filed for bankruptcy. *See*

Defendant's Statement of Material Facts at ¶ 6. Fourth, RJM arranges for a bankruptcy

scrub and a bankruptcy watch on all accounts to determine if the debtor has discharged

the debt in bankruptcy before commencing or continuing collection activity. *See*

Defendant's Statement of Material Facts at ¶ 7. And finally, RJM has a policy and

procedure in place to cease collection on all accounts in which it learns that the debtor

has filed for bankruptcy. *See* Defendant's Statement of Material Facts at ¶ 16.

## 1.     RJM Relied Upon the Representations Made by the Original Creditor in the Asset Purchase Agreement.

First, RJM relied on the representations made by the original creditor – FDS –

that the Account had not been discharged in bankruptcy and to immediately notify RJM

of any claims that might affect RJM. Specifically, Paragraph 2(c) of the Asset Purchase

Agreement by and between RJM and FDS states as follows:

> Accounts Sold "As Is" . . . Notwithstanding the foregoing, the Buyer and the Seller (i) recognize their respective obligations not to attempt to collect or to collect debt that has been discharged in bankruptcy, (ii) have not and will not intentionally attempt to collect or collect debt that has been discharged in bankruptcy, and (iii) acknowledge that the Seller does not intend to transfer and the Buyer does not intend to buy Accounts that have been discharged in bankruptcy.

*See* Defendant's Statement of Material Facts at 5. Moreover, Paragraph 9 of the Asset

Purchase Agreement by and between RJM and FDS states as follows:

8

> The parties will notify each other immediately of any claim
> or threatened claim that may affect the Seller or the Buyer
> or the other indemnified parties, that is discovered by them.

*See* Defendant's Statement of Material Facts at 6. Thus, pursuant to the Asset Purchase

Agreement, if RJM is apprised by FDS - or any other source - that a debtor has filed for

bankruptcy, RJM immediately stops all collection activity on the account and closes the

account. *See* Defendant's Statement of Material Facts at ¶¶ 6-7.

Like the defendants in *Hyman* and *Jenkins*, RJM reasonably relied on its

agreement with the original creditor that it would not forward an account that had been

discharged in bankruptcy. Moreover, RJM reasonably relied on the original creditor's

agreement to inform RJM of any claims arising out of the accounts sold under the

Agreement.

Furthermore, FDS– like RJM – was not listed as a creditor on Plaintiff's Schedule

F filed in Plaintiff's bankruptcy petition. Thus, despite the reasonable procedure it had in

place, neither FDS nor RJM received actual notice of Plaintiff's bankruptcy.

Accordingly, RJM is entitled to judgment as a matter of law because it has reasonable

procedures in place – of the type deemed appropriate by the Seventh Circuit in *Hyman*

and *Jenkins* - to avoid any unintentional violations of the FDCPA and qualify for the

bona fide error defense.

> 2.   **RJM Also Had Reasonable Procedures in Place with a Third
>       Party Collection Agency that it Retained to Collect on the
>       Account.**

Not only does RJM have reasonable procedures in place with the original creditor

to avoid violations of § 1692c(2)(A), RJM also has reasonable procedures in place with

Plaza Associates   an independent contractor debt collection agency that it engaged to

collect on the Account.  RJM retained Plaza Associates, a New York Company that collects debts on behalf of creditors, to collect a debt owed by Lisa Ross.  *See* Defendant's Statement of Material Facts at ¶ 17.  Pursuant to the parties' oral agreement, Plaza would apprise RJM if it received a notice of bankruptcy on any of RJM's accounts. Further, when Plaza would close an account, it would return any and all written communications received from the debtor to RJM.  *See* Defendant's Statement of Material Facts at ¶ 16.  From September 2002 through October 2003, Plaza Associates attempted to collect on the Account from a debtor named Lisa Ross.  *See* Defendant's Statement of Material Facts at ¶ 17.

Plaintiff argues that Plaza must have received a bankruptcy notice regarding Plaintiff's bankruptcy, and Plaza's knowledge regarding Plaintiff's bankruptcy must be imputed to RJM.  This argument must fail.  Even if Plaza received the bankruptcy notice regarding Lisa Ross, and Plaza's knowledge of the debt collector could be imputed to RJM, RJM had reasonable procedures in place to avoid such violations of the FDCPA.

Pursuant to the business arrangement between RJM and Plaza, if Plaza receives a notice of bankruptcy from a debtor, it will forward such notice to RJM.  Thus, like the procedures in place between RJM and FDS, and those in *Hyman* and *Jenkins*, RJM's procedures with Plaza Associates are also reasonable.  Accordingly, RJM is entitled to judgment as a matter of law because it is entitled to the bona fide error defense under § 1692k of the FDCPA.

> **3.     RJM Has Procedures in Place to Conduct a Bankruptcy Scrub and a Bankruptcy Watch on FDS Accounts to Avoid Violations of the FDCPA.**

RJM has procedures in place that go above and beyond those that have been held to be reasonably by the Seventh Circuit in order to prevent violations of the FDCPA. Although the Seventh Circuit has held that a debt collector need not search the bankruptcy records or conduct a "Banko" search to be entitled to the bona fide error defense, RJM conducts a bankruptcy scrub and a bankruptcy watch on accounts before commencing collection activities. *See* Jenkins v. Heintz, 124 F.3d. 824, 828 (7th Cir. 1997); Hyman v. Tate, 362 F.3d 965 (7th Cir. 2004). Once RJM purchased the receivables from Federated Department Stores, it arranged for a bankruptcy search on a Lisa Ross, with the address 305 East 77th Street, Chicago, IL 60619. *See* Defendant's Statement of Material Facts at ¶ 8. Moreover, prior to Plaintiff's bankruptcy the Account was imputed for a continuous bankruptcy watch with Phin Solutions. *See* Defendant's Statement of Material Facts at ¶12. Phin Solutions compared the account information provided by RJM to Phin Solution's database of bankruptcies filed in the United States in the past seven (7) years. *See* Defendant's Statement of Material Facts at ¶ 13. The bankruptcy watch performed by Phin Solutions is two fold. First, Phin Solutions conducts a search for the debtor's name and identifying information. *See* the Affidavit of Todd Feige attached to Defendant's Statement of Material Facts as Exhibit B. Second Phin Solutions conducts a search of the bankruptcy records to determine if RJM is listed as a creditor in a debtor's bankruptcy petition. *See* the Affidavit of Todd Feige attached to Defendant's Statement of Material Facts as Exhibit B. After reviewing the bankruptcy filings, Phin Solutions had no record of a Lisa Ross filing for bankruptcy. *See* the Affidavit of Todd Feige attached to Defendant's Statement of Material Facts as Exhibit B.

In this case, RJM fully complied with the procedures that Plaintiff's counsel has argued were reasonable in *Hyman* and *Jenkins*. Moreover, RJM's reasonable procedures go above and beyond what the Seventh Circuit has stated is reasonable in order to be entitled to the bona fide error defense because RJM conducts a bankruptcy search and a bankruptcy watch on all accounts. Thus, in light of the procedures in place to prevent FDCPA violations and the clear lack of intent to violate the FDCPA, RJM is entitled to the bona fide error defense provided for under §1692k of the FDCPA.

### III.   RJM DID NOT VIOLATE § 1692c(a)(2) OF THE FDCPA.

RJM is also entitled to judgment as a matter of law on Count II of Plaintiff's Complaint. RJM did not violate § 1692c(a)(2) of the FDCPA because it did not have any actual or implied knowledge that Plaintiff was represented by counsel and (2) even if RJM did violate §1692c(a)(2) of the FDCPA, RJM is entitled to the bona fide error defense.

### A.   RJM Had No Actual Or Imputed Knowledge that Plaintiff was Represented by Counsel.

RJM is entitled to judgment as a matter of law because RJM had no actual knowledge that Plaintiff was represented by counsel in relation to the Account. Unlike §1692e(2)(A), §1692c(a)(2) of the FDCPA does not impose strict liability on a debt collector. Section 1692c(a)(2) states, in pertinent part, as follows:

> . . . a debt collector may not communicate with a consumer in connection with the collection of any debt
> (2)      if the debt collector *knows* the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address . . .

15 U.S.C. §1692c(a)(2)(emphasis added).

Defendant, RJM, did not violate §1692c(a)(2) because it had no actual knowledge of Plaintiff retaining counsel relating to any bankruptcy action. In order to prevail under 15 U.S.C. § 1692c(a)(2), a plaintiffs must prove that Defendant contacted her when the collector had actual knowledge that she was represented by an attorney. Jones v. Weiss, Neuren & Neuren, 95 F.Supp.2d 105, 109 (N.D.N.Y. 2000); Filsinger v. Upton Cohen & Slamowitz, 2000 U.S. Dist LEXIS 1824 *5 (N.D.N.Y. 2000).

In this case, it is undisputed that RJM did not have actual knowledge that Plaintiff was represented by counsel with respect to Lisa Ross Account until Plaintiff's bankruptcy counsel contacted RJM on October 6, 2004. *See* Defendant's Statement of Material Facts at ¶ 22. RJM was not listed as a creditor on Schedule F of Plaintiff's bankruptcy petition. And the original creditor – FDS - was not listed as a creditor on Schedule F of Plaintiff's bankruptcy petition. Although Plaintiff did list Plaza Associates as a creditor on Schedule F of her bankruptcy petition, notice to Plaza of a bankruptcy by a "Delisa" Ross would be meaningless when Plaza was attempting to collect from Lisa Ross. And in any event, Plaza has no record of receiving Plaintiff's bankruptcy notice during the time or after it attempted to collect the debt on behalf of RJM.

During the entire collection process, RJM arranged only for bankruptcy searches utilizing the name *Lisa Ross* not Delisa Ross, which is the name Plaintiff claims to use. As such, Defendant RJM had no actual or imputed knowledge that Plaintiff filed for bankruptcy and hired an attorney. Therefore, as was the case with the defendants in *Jones* and *Filsinger*, RJM did not violate Section 1692c(a)(2) of the FDCPA.

**B.     In the Alternative, RJM is Entitled to the Bona Fide Error Defense.**

Even if Plaza received notice of Plaintiff's bankruptcy and that notice could be imputed to RJM, RJM would be entitled to judgment as a matter of law on Count II of Plaintiff's Complaint because RJM is entitled to the bona fide error defense. As stated in Part II infra, RJM is entitled to the bona fide error defense under § 1692k of the FDCPA if the violation was (1) unintentional and (2) RJM had reasonable procedures in place to avoid such errors. Jenkins, 124 F.3d. at 828; Hyman, 362 F.3d 965. Like any alleged violation of § 1692e(2)(A), RJM did not intentionally violate § 1692e(a)(2) of the FDCPA. RJM did not have any knowledge regarding Plaintiff's representation by counsel because RJM did not have any knowledge regarding Plaintiff's bankruptcy until RJM was contacted by Plaintiff's bankruptcy attorney. And immediately upon learning of Plaintiff's claim that she discharged the Account, RJM ceased all collection and closed the Account. *See* Defendant's Statement of Material Facts at ¶ 25.

Moreover, as stated in length in Part II(B) infra, RJM had several reasonable procedures in place to avoid such errors of the FDCPA. In short, RJM relied upon representations made by the original creditor. RJM relied upon the representations made by Plaza Associates that it would apprise RJM if it receives notice of a debtor's bankruptcy. And RJM conducted a bankruptcy scrub and a bankruptcy watch on its accounts. Thus, RJM goes above and beyond its obligations under *Jenkins* and *Hyman* in order to avail itself of the bona fide error defense under § 1692k of the FDCPA. Accordingly, RJM is entitled to judgment as a matter of law on Count II of Plaintiff's Complaint.

## CONCLUSION

For the foregoing reasons, Defendant, RJM Acquisitions Funding LLC, respectfully moves this Court to find that no genuine issues of material exist between the Plaintiff and RJM Acquisitions Funding LLC, enter an order of summary judgment in favor of RJM Acquisitions Funding LLC, award RJM Acquisitions Funding LLC its court costs, and grant RJM Acquisitions Funding LLC such other relief as this Court deems just.

Respectfully submitted,
RJM Acquisitions Funding LLC,

By: _Maria Whiteman_
One of its Attorneys

Joseph S. Messer
Maria L. Whiteman
Messer & Stilp, Ltd.
166 W. Washington, Suite 300
Chicago, Illinois 60602
312-334-FIRM (3476)
312-334-3434 (fax)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**F I L E D**

JUN 2 6 2002

MICHAEL W. DOBBIN
CLERK, U.S. DISTRICT C(

Cheryl L. Hyman,        )
                        )
    Plaintiff,          )
                        )
    v.                  )     No. 02 C 0242
                        )
Dick Tate and Harry Kirlin, d/b/a )     Judge Kennelly
Tate & Kirlin, Associates,        )     Magistrate Judge Denlow
                        )
    Defendants.         )

**DOCKETED**

JUL 2 3 2002

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Cheryl Hyman, submits the following memorandum of law in support of her

Motion for Summary Judgment:

### FACTUAL BACKGROUND

Plaintiff, Cheryl L. Hyman, filed a voluntary Chapter 13 petition in bankruptcy on

January 14, 2000 styled, In re Hyman, N.D.Ill. Bankr. No. 00 B 01191. (56.1 Stat. at ¶

5)[1]. On "Schedule F - Creditors Holding Unsecured Nonpriority Claims" of Hyman's

bankruptcy petition a debt in the amount of $437.61, allegedly owed to Cross Country

Bank, at P.O. Box 310711, Boca Raton, Florida, 33431, which address is a mailing

address used by Defendant's client, Cross Country Bank, was listed.  (56.1 Stat. at ¶¶

6, 7).  A debt collector, Simm Associates, Inc., was also listed as representing Cross

Country Bank on Hyman's Schedule F.  (56.1 Stat. at ¶ 8).  The debt allegedly owed to

Cross Country Bank was a consumer debt based on credit card purchases made for

---

[1] References to "56.1 Stat." refer to Plaintiff's Local Rule 56.1 Statement of Material
Facts, which is attached hereto as Exhibit A.

EXHIBIT
A

personal, family or household purposes. (56.1 Stat. at ¶ 3).

Both Cross Country Bank and a prior debt collector, Simm Associates, Inc., were automatically sent notice of Cheryl L. Hyman's Bankruptcy by the Clerk's Office of United States Bankruptcy Court for the Northern District of Illinois via first class mail on or about January 21, 2000. (56.1 Stat. at ¶ 9) Thus, both Cross Country Bank and Simm Associates had notice that Hyman had filed for Bankruptcy prior to transferring to Defendants for collection the debt Cheryl L. Hyman allegedly owed to Cross Country Bank. (56.1 Stat. at ¶ 10).

Moreover, in January 2001, Hyman's bankruptcy was listed on her credit reports, as maintained by major credit reporting agencies, including Trans Union and Equifax. (56.1 Stat. at ¶ 11). Nevertheless, on or about September 11, 2001, while her bankruptcy was still pending, Defendants, Dick Tate and Harry Kirlin, doing business and Tate & Kirlin, Associates (hereinafter collectively "Tate & Kirlin"), sent Plaintiff a form debt collection letter, attempting to collect on the debt to Cross Country Bank which was subject to the automatic stay in bankruptcy. (56.1 Stat. at ¶ 12). At the time Defendants sent the form debt collection letter to Hyman, Defendant could have determined Plaintiff's bankruptcy status by asking the creditor, which had been given notice of Plaintiff's bankruptcy (56.1 Stat. at ¶ 9). Additionally, Defendants had the ability to obtain credit reports on debtors and thus Tate & Kirlin could have easily determined Cheryl L. Hyman's bankruptcy status by pulling a copy of her credit report prior to attempting to collect the Cross Country Bank debt from her in September of 2001. (56.1 Stat. at ¶¶ 13, 14). Moreover, Defendants could have determined that Hyman filed for bankruptcy in January 2000 by searching the files of the United States

2

Bankruptcy Court for the Northern District of Illinois, either manually or on-line via the

Internet through the United States Bankruptcy Court for the Northern District of Illinois'

web site.  (56.1 Stat. at ¶ 15).

On January 10, 2002, Hyman filed her Complaint against the Defendants,

alleging that Defendants' September 11, 2001 form debt collection letter violated §§

1692c(a)(2), e and f of the Fair Debt Collection Practices Act, 15.U.S.C. § 1692 et seq.

("FDCPA").

## ARGUMENT

A Court may grant summary judgment when there is no genuine issue as to any

material fact and the moving party is entitled to summary judgment as a matter of law.

Fed.R.Civ.P. 56(c).  A party seeking summary judgment has the burden of establishing

the lack of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-

23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Section 1692e of the FDCPA prohibits a debt collector from using an false,

deceptive or misleading representation or means in connection with the collection of a

debt, including, but not limited to, the false representation of the character, amount or

legal status of any debt, see 15 U.S.C. § 1692e(2)(A); section 1692f prohibits a debt

collector from using any unfair or unconscionable means to collect or attempt to collect

any debt.  Attempting to collect a debt which was subject to a pending bankruptcy is

both false, deceptive or misleading and unfair or unconscionable, in violation of §§

1692e and f of the FDCPA.

Moreover, section 1692c(a)(2) prohibits a debt collector from communicating with

a consumer if the debt collector knows the consumer is represented by an attorney with

3

respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address.  The creditor was given notice, through Plaintiff's bankruptcy, that she was represented by an attorney in connection with this debt and such knowledge may be imputed to Defendants.  By sending a debt collection letter directly to Hyman, despite notice that she was represented by bankruptcy counsel in connection with this debt, Defendants violated section 1692c(a)(2).

There is no dispute as to the issues of material fact necessary to render a judgment in this matter.  Plaintiff has testified that the debt involved was a consumer debt, incurred primarily for personal, family of household purposes, see 15 U.S.C. § 1692a(5). (56.1 Stat. ¶ 3).  Defendants admit that Tate & Kirlin it is a debt collector (56.1 Stat. at ¶ 4) and that Tate & Kirlin sent Plaintiff the initial form debt collection letter attached as Exhibit A to Plaintiff's Complaint, within one year of the date of the Complaint and that the debt upon which was attempting to collect was listed on Hyman's bankruptcy petition (56.1 Stat. at ¶ 12).  Thus, Defendant could have determined Plaintiff's bankruptcy status by asking the creditor, which had been given notice of Plaintiff's bankruptcy (56.1 Stat. at ¶ 9).  Defendants also admit that Hyman's bankruptcy was a matter of public record.  (56.1 Stat. at ¶ 12).   The records of the United States Bankruptcy Court for the Northern District of Illinois show that both the creditor, Cross Country Bank, and a prior debt collector, were given notice of Hyman's bankruptcy via first class U.S. Mail on January 21, 2001. (See Exhibit 3 to Rule 56.1 Statement).  The only matter at issue is whether Cross Country Bank's knowledge of Hyman's bankruptcy, and representation by counsel in relation to the debt to Cross Country Bank, may be imputed to Defendants and whether Defendants knew or could

4

have readily ascertained, that Plaintiff was represented by bankruptcy counsel as to this debt.

## I.    Knowledge of Hyman's Bankruptcy May Be Imputed to Defendant

Knowledge of Hyman's bankruptcy, and the fact that she was represented by an attorney in connection with the alleged debt to Cross Country Bank, may be imputed to Defendant, when the creditor has such knowledge and fails to convey it to its agent, the debt collector at the time it seeks collection. Powers v. Professional Credit Services, Inc., 107 F.Supp.2d 166, 169 (N.D.N.Y. 2000).

In Powers, the creditor was notified by Plaintiff's attorney that she was represented by counsel with respect to the debt she owed the creditor. The creditor retained a debt collector and forwarded to it the creditor's entire file on Plaintiff's account, with the exception of the letter the creditor had received disclosing the fact that Plaintiff was represented by counsel. In holding that the Plaintiff had stated a cause of action under the FDCPA and denying the Defendant debt collector's motion to dismiss, the court in Powers held:

> The creditor thus had actual knowledge of Plaintiff's legal representation but failed to disclose that fact to its debt collector. Permitting creditors to engage in such a limited disclosure would utterly eviscerate the protections afforded debtors by the FDCPA.
>
> Contrary to Defendant's assertion, the statute does not require that the debt collector have "actual knowledge" of plaintiff's legal representation. Knowledge can be imputed to the debt collector when the creditor has such knowledge and fails to convey it to its agent, the debt collector, at the time its seeks collection. Moreover, when accepting the file, the debt collector can readily ascertain the attorney's name and address from the creditor.
>
> The statute itself specifically states that "if the debt collector knows that the consumer is represented by an attorney with respect to such debt and has knowledge, or can readily ascertain such attorney's name and

address:, 15 U.S.C. § 1692c(a)(2), then the debt collector cannot communicate with the consumer. A creditor has a duty when turning over a file to his debt collector to convey all of the material facts regarding the claim. The law mandates that the debtor not be contacted when he has legal counsel. A creditor who had actual knowledge of such fact cannot retain a debt collector and with such information to contravene the FDCPA's intent.

Powers, 107 F.Supp.2d at 169. See also, Micare v. Foster & Garbus, 132 F.Supp.2d 77 (N.D.N.Y. 2001)(creditor's knowledge of attorney representation may be imputed to debt collector; motion to dismiss denied).

It is clear from the records of the bankruptcy court that the creditor, Cross Country Bank, was given notice of Plaintiff's Chapter 13 bankruptcy case and the meeting of creditors via U.S. Mail on January 21, 2000. (See Exhibit 3 to Rule 56.1 Statement). Moreover, a prior debt collector to whom the creditor had transferred the account had also been given notice of the bankruptcy. (See Exhibit 3 to Rule 56.1 Statement). The Notice sent to the creditor and prior debt collector clearly stated on its face the name, address and telephone number of Hyman's bankruptcy counsel. (See Exhibit 3 to Rule 56.1 Stat. at page 1)

Thus, the creditor had actual knowledge of Plaintiff's bankruptcy and the fact that she was represented by counsel. Despite this fact, the creditor chose to transfer the account to Defendants for further collection efforts, and Defendants chose to fail utterly to determine Plaintiff's bankruptcy status, even though it could have easily done so by asking the creditor, or checking publicly available court records or pulling credit reports to which it had access. As the Court in Powers stated, permitting creditors to engage in the sort of limited disclosure to debt collectors that occurred here would eviscerate the FDCPA. Knowledge of Hyman's bankruptcy and that fact that she was represented by

counsel in connection with the collection of this debt should be imputed to the creditor's

agent in this matter, the Defendants, and summary judgment entered as to her claims.

## II.     Defendant Could Have Readily Ascertained That Plaintiff Had Filed For Bankruptcy And Was Represented By Counsel

Hyman's bankruptcy, and her representation by counsel related to debts she

owed, was a matter of public record.   As of January, 2001, Hyman's bankruptcy was

listed on credit reports maintained by major credit reporting agencies, including Equifax

and Trans Union, that information having been posted as of January, 2001. (56.1 Stat.

at ¶ 11).  At the time Defendants sent the form debt collection letter to Hyman,

Defendants had the ability to obtain credit reports on debtors (56.1 Stat. at ¶ 13) and

Defendants could have determined Hyman's bankruptcy status by pulling a copy of her

credit report prior to attempting to collect the Cross Country Bank debt from her in

September of 2001. (56.1 Stat. at ¶ 14).

Moreover, Defendants could have determined that Hyman filed for bankruptcy in

January 2000 by searching the files of the United States Bankruptcy Court for the

Northern District of Illinois, either manually or on-line via the Internet through the United

States Bankruptcy Court for the Northern District of Illinois' web site. (56.1 Stat. at ¶ 15).

Finally, there are computer programs available commercially, such as "Banko", which

enable a debt collector to search bankruptcy court records nationwide to determine

whether a consumer has filed for bankruptcy. (56.1 Stat. at ¶ 16).

The widespread availability of federal bankruptcy court records on line, as well as

a debt collector's ability to obtain credit reports on individuals and the commercial

availability of bankruptcy court record search programs, clearly puts debt collectors on

notice as to the bankruptcy status of debtors.  To allow a debt collector to remain

willfully ignorant of matters of public record -- an ostrich with its head in the sane --

would eviscerate the protections afforded consumers under the FDCPA.  Defendants

clearly had the means at their disposal to determine that Plaintiff had filed for

bankruptcy, long before Defendants attempted to collect this debt from Plaintiff and

could have readily ascertained that fact, as well as the fact that Plaintiff was

represented by counsel.  Thus, Defendants failure to ascertain that Plaintiff was

represented by counsel constitutes a violation of § 1692c(a)(2) of the FDCPA.

## CONCLUSION

Plaintiff, Cheryl Hyman, is entitled to judgment against Defendants Tate & Kirlin

for its violations of the FDCPA and this Court should enter judgment as to liability in her

favor and against Defendant.

Respectfully Submitted,

One of Plaintiff's Attorneys

Dated: June 26, 2002

David J. Philipps
Mary E. Philipps
Gomolinski & Philipps, Ltd.
8855 S. Roberts Road
Hickory Hills, Illinois 60457
(708) 974-2900
(708) 974-2907 (FAX)

# SEE CASE FILE FOR EXHIBITS