IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Delisa Ross, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 04 C 6557 |
| RJM Acquisitions Funding, L.L.C., a Delaware limited liability company, | ) ) ) | Magistrate Judge Brown |
| Defendant. | ) ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Delisa Ross ("Ross"), hereby responds to Defendant's motion for summary judgment:[1]

**INTRODUCTION**

The facts related to this matter are set forth in detail in Plaintiff's Memorandum in Support of Motion for Summary Judgment (at pages 1-2), filed on June 21, 2005 and in Plaintiff's Local Rule 56.1 Statement of Material Facts, attached thereto as Exhibit 1, and, in the interest of brevity, Plaintiff, will refrain from rehashing them here.

There is no doubt that Defendant RJM Acquisitions LLC ("RJM") violated § 1692e of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") by attempting to collect from Plaintiff Ross a debt that had been discharged in bankruptcy. See, Randolph v. IMBS, Inc., 368 F.3d 726, 728-730 (7th Cir. 2004); see also, Turner v. J.V.D.B. & Associates, Inc., 330 F.3d 991, 996 (7th Cir. 2003); Alexander v. Unlimited Progress Corp., 2004 WL 2384645 at [*3](N.D. Ill. 2004).

---

[1] Plaintiff's Response to Defendant's Rule 56.1 Statement of Material Facts is attached hereto as Exhibit 1.

Indeed, Defendant does not even argue that its attempt to collect a discharged debt from Plaintiff Ross did not violate § 1692e of the FDCPA (although it does dispute that it violated § 1692c(a)(2) of the FDCPA)[2]. Rather, Defendant argues that it is entitled to the *bona fide* error defense provided by § 1692k(c) of the FDCPA.

As the Seventh Circuit noted in <u>Jenkins v. Heintz</u>, 124 F.3d 824, 834 (7th Cir. 1997), § 1692k(c) "requires that the debt collector show by a preponderance of the evidence that the violation was not intentional and resulted from a *bona fide* error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Thus, the burden of proving its defense is on Defendant RJM -- which it must do by a preponderance of the evidence.

Defendant RJM has cross-moved for summary judgment. Defendant RJM, however, has consistently abused the discovery process and has withheld -- and continues to withhold -- requested discovery materials. Moreover, Defendant RJM's purported *bona fide* error defense is supported principally with affidavits which contain demonstrably false statements, contradictions, and multiple instances of hearsay, and is little more than smoke and mirrors to mislead Plaintiff and this Court. Thus, Defendant's motion for summary judgment should be denied -- and Plaintiff's motion for summary judgment granted.

## ARGUMENT

A Court may grant summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law.

---

[2] Defendant RJM also states, on page three of its Memorandum that "(1) Plaintiff does not have standing to bring and FDCPA claim against RJM;" -- but then never bothers to argue this point.

Fed.R.Civ.P. 56(c). A party seeking summary judgment has the burden of establishing the lack of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Defendant's purported *bona fide* error defense simply does not meet this standard.

### I. Defendant RJM Has Consistently Abused The Discovery Process And Is Withholding Requested Evidence

#### A. Defendant Has Wrongly Withheld Evidence

In her discovery requests, Plaintiff sought all documents pertaining to her account. (<u>See</u>, Exhibit <u>G</u> to Pl.'s 56.1 Stat. at ¶ 6). Defendant produced what it purported to be its "collector's notes" -- a single page which does not show the name, address, or any other identifying information related to Plaintiff Ross, including the purported creditor, amount of the debt, account number or any other information concerning the debt Defendant was attempting to collect. (56.1 Stat. at ¶ 15). Plaintiff's counsel repeatedly told Defendant that the "collector's notes" could not possibly be all that Defendant RJM had. (<u>See</u>, <u>e.g.</u>, Exhibit <u>B</u> to Pl.'s February 17, 2005 Motion to Compel; Exhibit <u>C</u> to Def.'s 56.1 Stat.).

Thus, Plaintiff filed a Motion to Compel. On March 24, 2005, at the hearing in response to Plaintiff's Motion to Compel, counsel for Defendant stated in open court that: **"Everything has been turned over regardless of if it is Delisa or Lisa Ross."** (<u>See</u>, Pl.'s 56.1 Stat. at ¶ 16, emphasis added). That statement by Defendant's counsel was not true.

According to Defendant RJM's President, Scott Matte, at his September 23, 2005 deposition, there are, in fact, multiple other "screens" for a debtor on Defendant's computer system -- a "demographic" screen (with name, address, social security

3

number and other identifying information), a bankruptcy screen, a screen with phone numbers, a screen with places of employment -- as well a some sort of storage system that would indicate which collector made the various entries on the "collector's notes". Plaintiff's counsel repeatedly asked that this information -- which should have been produced long ago in response to Plaintiff's discovery requests -- be produced.  (See Deposition of Scott Matte, attached as Exhibit A, at p. 30, line 20 to p. 31 line 24; p. 34, line 2, to p. 37, line 3, and p. 47 lines 13 - 20).

Of course, five weeks later, Defendant has failed to produce this material -- material which Defendant's counsel falsely told this Court, on March 24, 2005, had already been produced.  Such discovery abuse warrants sanctions against Defendant and its counsel -- in this case, by striking Defendant RJM's *bona fide* error defense. See, Fed.R.Civ.P. 37.

### B.   Defendant RJM Failed To Comply With Its Discovery Obligations Under Rules 26, 33 And 34

As detailed in Plaintiff's Memorandum in Support of Summary Judgment, at page six, Defendant's January 11, 2005 Rule 26(a) disclosures failed to provide any information regarding Defendant's purported *bona fide* error defense.  (Pl.'s 56.1 Stat. at ¶¶ 14, 15)[3].  Indeed, Defendant produced no documents in response to Plaintiff's document  production requests or interrogatories, and either answered that it had no responsive documents or objected to Plaintiff's requests. (56.1 Stat. at ¶ 17).

More importantly, in response to Plaintiff's Interrogatory No. 14, which asked that

---

[3] Months later, on August 23, 2005, Defendant purported to correct its failure by serving "supplemental" Rule 26(a) disclosures on Plaintiff -- none of which were new information, but rather information that had always been known to Defendant, and should have been in Defendant's initial disclosures.

Defendant state the "factual basis" for any affirmative defense and identify all persons with knowledge of these facts, Defendant simply restated the elements of the bona fide error defense and stated that it had engaged Phin Solutions "to conduct a bankruptcy search when the account is first obtained by Defendant, RJM, and the bankruptcy search is conducted each and every day thereafter."  See, Exhibit G to Pl.'s 56.1Stat., Response to Interrog. at ¶ 14. Likewise, Defendant produced no documents in response to Plaintiff's requests for all documents that "refer to, relate to, or support or diminish any affirmative defense" (See, 56.1 Stat. at ¶ 17).

    First, that response is simply not true.  Defendant obtained Plaintiff's Fingerhut account in August, 2002, yet Phin Solutions did not start working with RJM until March, 2004.  (See Deposition of Todd Feige, attached as Exhibit B, at p. 15, lines 12 - 15). And while the purported "collector's notes" produced by RJM claim that Plaintiff's account was inputted for bankruptcy watch on October 4, 2002 (Exhibit E to Pl.'s 56.1 Stat.), Defendant has provided absolutely no evidence as to what this "bankruptcy watch" might have been, who conducted it, how it was conducted or what data relative to this account was "input" for "bankruptcy watch" -- despite the fact that it is Defendant's burden to do so.  In any case, it was not Phin Solutions.

    More importantly however, is that Defendant's Rule 26(a) disclosures and discovery responses, as to its purported affirmative defense, must be compared to the detailed "facts" that Defendant RJM's Mr. Matte now sets forth in ¶¶ 6-22 of his August 22, 2005 affidavit.  All of that information should have been set forth in Defendant's answers to Plaintiff's discovery responses and Rule 26(a) disclosures -- not for the first

5

time as an exhibit in summary judgment briefing.[4]

Indeed, Defendant has been playing fast and loose with the facts since the beginning of this litigation. On November 16, 2004, Defendant's counsel sent Plaintiff's counsel a letter, threatening Plaintiff and her counsel with sanctions if the complaint was not withdrawn.  Defendant claimed that it had a *bona fide* error defense, which it purported to support with detailed references to the enclosed affidavit of one "Samir Shah" concerning RJM's use of a firm called "Finn Solutions" to conduct bankruptcy searches.  (See exchange of letters, attached as Group Exhibit C).

The problem was, there was no such affidavit enclosed, nor was the affidavit of Samir Shah ever forthcoming.  Instead, nearly two weeks later, on November 29, 2004, Defendant's counsel forwarded to Plaintiff's counsel an affidavit from Scott Matte -- dated three days after Defendant's November 16, 2004 letter, and making the conclusory statement that "RJM conducts ongoing and continual bankruptcy checks each and every day." (See attached Exhibit D).  To date, and despite repeated requests that it do so, Defendant's counsel has never explained how it could refer in detail to Mr. Shah's affidavit on November 16, 2004, and demand that Plaintiff withdraw her Complaint or face sanctions, when such an affidavit did not apparently exist.

Defendant's utter failure to comply with its discovery obligations and repeated discovery abuses warrants the denial of its motion for summary judgment, and the entry of judgment in favor of Plaintiff.

---

[4] In its Response to Plaintiff's Motion for Summary Judgment, Defendant argues that it has met its discovery obligations. (Def.'s Resp. at pp. 7 - 10).  This Court, in granting Plaintiff's Motion to Strike on August 17, 2005, clearly held that Defendant has not. Moreover, based on what was learned through subsequent deposition testimony, Defendant has clearly withheld evidence.

## II. The Testimony Of Scott Matte And Todd Feige Is Demonstrably Untrue And Should Be Disregarded

Defendant's *bona fide* error defense rests principally on the testimony of two witnesses, Defendant RJM's President, Scott Matte and Todd Feige, the Executive Vice-President and co-founder of Phin Solutions. The testimony of Mr. Matte and Mr. Feige, both in their affidavits and depositions, contain enough contradictions and outright misstatements to call in to question any "fact" to which they testify.

### A. Scott Matte's Untrue Testimony

Scott Matte has submitted three "affidavits" to Plaintiff in the course of this litigation. The first affidavit stated that "RJM received no notice of any bankruptcy proceeding up until the time RJM learned of this lawsuit." (See, Exhibit D at ¶ 6). Mr. Matte's statement was clearly false -- as shown by Defendant's own collector's notes (Exhibit E to Pl.'s 56.1 Stat.) -- since those notes show that Defendant RJM noted Plaintiff's bankruptcy on October 7, 2004, and this lawsuit was not filed until October 12, 2004, and served on RJM on October 15, 2004.

In his third affidavit, made on August 22, 2005, Mr. Matte has changed his story -- now he claims that: "RJM did not receive notice of a bankruptcy affecting the Account until October 7, **2002**, which was when RJM was contacted by Plaintiff's bankruptcy attorney." (see Exhibit A to Def.'s 56.1 Stat. at ¶ 16 (emphasis added); this same false statement is made in ¶ 12 as well).[5] This is either a judicial admission that RJM knew about Plaintiff Ross' bankruptcy before it attempted to collect her debt (and before it

---

[5] Although Defendant might dismiss this error as a mere typographical error, it should be noted that Mr. Matte was repeatedly asked if his affidavit was true and accurate and he swore that it was. (Matte Dep., Ex. A at p. 12, lines 19 - 25; p. 54, line 24 to p. 55, line 14; p. 72, line 21 - 23).

was filed on June 20, 2003), or, proof that, despite multiple attempts to come up with the facts that would support a *bona fide* error defense, Mr. Matte just cannot keep his story straight.

Moreover, in his first affidavit, Mr. Matte details none of the facts related to Defendant RJM's bona fide error defense -- he only claims that "RJM conducts ongoing and continual bankruptcy checks each and every day". (See, Exhibit D at ¶ 6). Only during summary judgment briefing does Mr. Matte suddenly become a font of information, swearing to a detailed "five-part" procedure to avoid collecting on debts subject to bankruptcy proceedings, involving not only RJM's practice and procedures, but Plaza Associates' practices and procedures as well. (See Exhibit A to Def.'s 56.1 Stat. at ¶¶ 6 - 22).

Moreover, in his third affidavit, Mr. Matte swears to many "facts" for which he provides no foundation as to how he would know this information. For example, Mr. Matte states that Ms. Ross, in her bankruptcy petition, improperly listed her creditor as "Fingerhut Credit Advantage c/o Axsys National Bank" and claims that Axsys National Bank did not service Plaintiff Ross' Account (Exhibit A to Def.'s 56.1 Stat. at ¶ 12) -- but provides no basis for how he would know who serviced Plaintiff's Fingerhut account from 1995, when the purchases were allegedly made, until RJM bought these accounts from Federated Department Stores in August 2002.[6]

Similarly, Mr. Matte purports to testify as to facts related to entries made in RJM's computer system and collection software beginning in 2002 (Exhibit A to Def.'s

---

[6] At his deposition, Mr. Matte could only testify that it was his understanding that FDS had purchased Fingerhut in 2002. (Matte Dep., Ex. A at p. 16, lines 9-14).

56.1 Stat. at ¶¶ 14-16).  Yet, at his deposition, Mr. Matte testified that RJM did not even get its computer system up and running until March 2004, and that before that time, the computer records were kept on Plaza Associates' computer system, and then imported into RJM's system.  (Matte Dep., Ex. A at p. 66, line 23 to p. 68 line 5).

Moreover, during his deposition, Mr. Matte was both combative -- refusing to answer an innocuous personal background question (Matte Dep., Ex. A at p. 7, line 3 to p. 11, line 6) -- and evasive.  For example, Mr. Matte, the President of Defendant RJM, professed not to know whether he had ever given a deposition (Matte Dep., Ex. A at p. 5, lines 18 - 20), the corporate form or true name of Plaza Associates (the company he claims to have been senior Vice President of for ten years) (Matte Dep., Ex. A at p. 18, line 9 to p.19, line 11), when RJM was founded (Matte Dep., Ex. A at p. 23, lines 11 to 17), whether RJM performed any due diligence in its purchase of accounts from FDS (Matte Dep., Ex. A at. p. 42, line 16 to p. 43, line 23), how many accounts RJM handled (Matte Dep., Ex. A at p. 78, lines 6 -25) and who drafted his third affidavit or how many drafts of it he saw. (Matte Dep. Ex. A at p. 71, line 3 to p. 72 line 20).

Clearly, the testimony of Scott Matte, upon which Defendant principally relies to support its *bona fide* error defense -- Defendant RJM uses Mr. Matte's August 22, 2005 Affidavit to support 14 of the 24 facts in its Rule 56. 1 Statement (Def.'s Rule 56.1 Stat. at ¶¶ 1, 3 - 9, 16 - 18, 21 - 23) -- should be viewed as substantially untrue and with considerable skepticism.

### B.   Todd Feige's Untrue Testimony

In moving for summary judgment, Plaintiff detailed at length the problems inherent with the affidavit of Todd Feige, the Executive Vice-President and co-founder of

9

Phin Solutions (see, Pl.'s Memo. in Supp. Of Summ.Jmt. at pp. 7 - 9) and Plaintiff will not rehash those arguments here. Testimony given during Mr. Feige's deposition, however, calls in to question the accuracy of Mr. Feige's recall.

Mr. Feige, in his affidavit, swore that "Phin Solutions had no records of a Lisa Ross filing for bankruptcy as of October 4, 2004." (See, Exhibit I to Pl.'s 56.1 Stat.). When asked the significance of that date -- it is well past the date when Phin Solutions was allegedly hired by Defendant RJM to conduct bankruptcy searches on RJM's accounts (March 2004) and after the dates of both of RJM's letters to Plaintiff (June 15, 2004 and August 3, 2004) -- Mr. Feige replied that that was the date that he did the search, when he was notified that the case was pending by Defendant's counsel. (Feige Dep., Ex. B at p. 45, lines 12 - 22).  This cannot be true, since this case was not filed until October 12, 2004, and Defendant was not served until October 15, 2005.  Mr. Feige's testimony provides no trustworthy support for Defendant's *bona fide* error defense.

### III. Defendant RJM's Purported Procedures To Avoid Violating The FDCPA Are Little More Than Smoke And Mirrors

Even if the Court could overlook Defendant's multiple discovery abuses and implausible testimony, Defendant has not met it burden of proof as to the *bona fide* error defense. Defendant RJM has failed to produce sufficient evidence, let alone show "by a preponderance of the evidence", that its violation of the FDCPA was not intentional and resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.  15 U.S.C. § 1692k(c).

Defendant first argues that it did not intend to violate the FDCPA, because its violations are all Plaintiff's fault -- due the manner in which Plaintiff Ross listed the debt

to Fingerhut on her bankruptcy petition and her use of her actual name, Delisa", rather than the faulty data RJM had on her account, listing her name as "Lisa".  Since Defendant also makes these arguments at in responding to Plaintiff's Motion for Summary Judgment, Plaintiff will deal with those arguments in her Reply brief, which is filed contemporaneously with this Response, and Plaintiff hereby incorporates by reference the facts and arguments set forth in Plaintiff's Reply In Support of Her Motion for Summary Judgment , as if fully set forth herein.

> **A.     RJM Did Not Have Adequate Procedures In Place To Avoid Collecting On Debts In Bankruptcy**

Defendant RJM argues that it had five procedures in place to avoid collecting on accounts that had been discharged in bankruptcy.  (Def.'s Memo. at pp. 7 - 12).  These alleged procedures amount to little more than smoke and mirrors, and certainly were not reasonably adapted to avoid collecting on a bankrupt debt.

First, RJM argues that it had an agreement with Federated Department Stores (who was not the "original creditor" as RJM claims), that FDS would not forward accounts that had been discharged in bankruptcy.  (Def.'s Memo. at p. 8 -9).  Defendant RJM, however, was on notice that the account information it received from FDS as to the non-performing and charged-off Fingerhut accounts was old and might be inaccurate or incomplete.  (Pl.'s 56.1 Stat. at ¶ 26).  Moreover, contrary to RJM's assertion, nothing in the Agreement requires FDS to inform RJM of any bankruptcy notices FDS received after selling the accounts to RJM (Pl.'s 56.1 Stat. at Exhibit L).  A "Notice of Bankruptcy" from a consumer to a creditor cannot, in any way, be considered a "claim" or "threatened claim"; rather, it is a notice that an individual has filed for bankruptcy protection.  Indeed, Defendant's representative, Scott Matte, acknowledged

11

that the Agreement with FDS did not deal with what happens to accounts that go bankrupt after FDS sold those accounts to RJM.  (Matte Dep., Exhibit A, at p. 89, lines 2-12).

Defendant also claims that RJM had a policy in place to cease all collection upon learning that a debtor had filed for bankruptcy and an oral agreement with Plaza that Plaza would apprise RJM of any bankruptcy notices it received (Def.'s Memo. at p. 9 - 10) -- but the only evidence of this "policy" is Mr. Matte's self-serving Affidavit, and as detailed in Section II. A., above, Mr. Matte lacks any credibility.

Finally, Defendant RJM claims that it conducted an ongoing, daily, nationwide search of bankruptcy filings, through a third-party company, Phin Solutions, before collecting on an account to determine if a debtor had filed for bankruptcy protection. (Def.'s Memo. at p. 11).  It is clear from Mr. Feige's deposition testimony, that without a social security number, this search, with its peculiar scoring method, was not "reasonably adapted to avoid" collecting on bankrupt accounts.

Mr. Feige of Phin Solutions, testified that Phin Solutions' system matches on name, social security number, address, city, state and zip, with social security number, name and address being the main criteria.  (Feige Dep., Ex. B, at p. 22, line 14 to p. 23, line 4.)   Despite the fact that the information from Plaintiff Ross' bankruptcy matched the account information RJM had as to last name, address, city, state and zip, the absence of a social security number in RJM's files led to no match being returned on Plaintiff's account, based on Phin Solution "scoring" method.  (Feige Dep., Ex. B at p. 22 line 17 to p. 23, line 20).[7]  Indeed, Phin Solutions has no records of anything, if its

---

[7] It is also worth noting that nothing in the only document produced to Plaintiff -- RJM's

"search criteria" are not matched according to Phin Solutions scoring method. (Feige Dep., Ex. B at p. 22, line 17 to p. 24, line 5; p. 25, line 7 to p. 27, line 20; p. 41, line 15 to p. 42, line 23. Thus, the system Phin Solutions and RJM have set up to search accounts for bankruptcy -- accounts in which RJM has inaccurate or incomplete information -- is set up to fail without either perfect name and address data or a social security number.

### B.     The Seventh Circuit's Decision in Hyman Is Distinguishable

In its arguments, Defendant relies heavily on the Seventh Circuit's decision in Hyman v. Tate & Kirlin, 362 F. 3d 965 (7th Cir. 2004). The Hyman decision is both factually and procedurally distinguishable -- and one of its major factual predicates (that a creditor would not forward a debt in bankruptcy to a debt collector because it was "bad business" Hyman, 362 F.3d at 967) -- was proven by later events to be flat out wrong.

The debt at issue in Hyman was not so extremely old that it had been charged -off by the original creditor and sold to a debt scavenger for pennies on the dollar, as was Plaintiff Ross' debt (see, Pl.'s 56.1 Stat. at ¶ 26; Matte Dep., Exhibit A at p. 40, line 24 to p. 41, line 18 (debts are bought at a significant discount, in the range of ten cents on the dollar). Moreover, in Hyman, the debt collector's letter went out four days after the creditor referred it to the debt collector -- a fact the Seventh Circuit noted in Hyman that it had found important in Turner: a reasonable preventive measure to avoid collecting on a bankrupt account could be an agreement with the debt collector's client that the debts are current and the demand letter was sent soon after assignment.

---

purported collector's notes -- indicates that any bankruptcy searches were ever done in March 2004, when Phin Solutions was first hired by RJM, (Feige Dep., Exhibit B at p. 20, lines 16-23) or any time thereafter, before Plaintiff filed for bankruptcy on June 20,

13

Turner, 330 F.3d at 996, as cited in Hyman, 362 F.3d at 968.

Additionally, in Hyman, the district court reached its decision after a bench trial, in which the court had the opportunity to judge the credibility of the debt collector's witness as to its *bona fide* error defense.  At trial, evidence was presented that the debt collector believed that no client would sent it bankrupt accounts because that would be not be good business to do so, that the creditor would immediately notify the debt collector if the creditor received a notice of a bankruptcy and that, of the accounts referred to it, only .01% were later found to have been in bankruptcy.  Hyman, 362 F.3d at 967.  Thus, the Seventh Circuit found the debt collector's procedures reasonable. Hyman, 362 F.3d at 968.

Here, in contrast, RJM purchased old, non-performing charged-off debt, which was specifically represented by its seller as such, and, while not yet discharged in bankruptcy, to RJM and the seller's knowledge, was represented to be inaccurate or incomplete and so old that the seller believed that the statute of limitations may have run.  (56.1 Stat. at ¶ 26).  Moreover, RJM, was attempting to collect this debt from Plaintiff Ross two years after it purchased the account.  Additionally, RJM's alleged "independent contractor", Plaza Associates, was sent notice of Ross' bankruptcy in 2003 -- and, at the time the bankruptcy notices and discharge notice were sent, RJM did not even have its own computer system, but used Plaza's computer system.  (Matte Dep., Exhibit A at p. 66, line 23 to p. 68 line 5).  RJM has also not presented the sort of credible evidence the trial court received in Hyman.[8]  Thus, the minimal procedure that

---

2003.
[8] Later events showed that, for the creditor at issue in the Hyman decision, continuing to collect on bankrupt debts was not, apparently, "bad business".  Ms. Hyman's

the trial court in Hyman found "reasonable", a judgment which the Seventh Circuit found did not constitute clear error, is simply not applicable here.

## CONCLUSION

The Seventh Circuit has repeatedly held that "summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" Koszola v. Board of Education of the City of Chicago, 385 F.3d 1104, 1111(7th Cir. 2004), quoting Johnson v. Cambridge Industries, Inc., 325 F.3d 892, 901 (7th Cir. 2003), quoting Schacht v. Wisconsin Department of Corrections, 175 F.3d 497, 504 (7th Cir. 1999).

Defendant RJM has utterly failed to provide any credible evidence, let alone show by a preponderance of the evidence, that its attempt to collect from Plaintiff Ross a debt which had been discharged in bankruptcy, or that its contact with Plaintiff Ross, who was represented by an attorney in connection with the collection of her debts, was the result of a *bona fide* error, or that Defendant RJM had any reasonable procedures in place which were reasonably adapted to avoid such errors.  Defendant RJM's motion for summary judgment must be denied.

                                  Delisa Ross,

                                  /s/ Mary E. Philipps_____
                                  By:  One of Plaintiff's Attorneys

Dated: October 31, 2005

David J. Philipps
Mary E. Philipps

---

bankruptcy was filed in January, 2000.  Tate & Kirlin sent its debt collection letter in September 2001, and her FDCPA complaint was filed in January 2002.  Hyman, 362 F.3d at 966.  The Seventh Circuit's decision was issued on April 1, 2004.  Over one year later, on May 13, 2005, the creditor, Cross Country Bank, had yet another debt collector attempting to collect this very debt from Ms. Hyman, see attached Exhibit E.

Gomolinski & Philipps, Ltd.
9760 South Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)

**CERTIFICATE OF SERVICE**

   I hereby certify that on October 31, 2005, a copy of the foregoing **Plaintiff's Response in Opposition To Defendant's Motion For Summary Judgment** and **Plaintiff's Response To Defendant's Rule 56.1 Statement of Material Facts** was filed electronically.  Parties may access this filing through the Court's system.

| | |
|---|---|
| Joseph S. Messer | messer@messerstilp.com |
| Melissa Ann Goldenberg | goldenberg@messerstilp.com |
| Messer & Stilp, Ltd. | |
| 166 West Washington | |
| Suite 300 | |
| Chicago, Illinois  60602 | |

/s/ Mary E. Philipps_____

Mary E. Philipps (Ill. Bar No. 06197113)
Gomolinski & Philipps, Ltd.
9760 South Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
MEPHILIPPS@aol.com