

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DELISA ROSS,                               )
          Plaintiff,                     )
                             )
v.                                         )      **Case No. 04 C 6557**
                             )      **Magistrate Judge Geraldine Soat Brown**
RJM ACQUISITIONS FUNDING, LLC  )
          Defendant.                    )

## MEMORANDUM OPINION AND ORDER

Plaintiff Delisa Ross ("Ross") brought this action pursuant to the Fair Debt Collection

Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), alleging that RJM Acquisitions Funding, LLC

("RJM") violated the FDCPA by demanding payment of a debt that had been discharged in

bankruptcy proceedings, and by communicating with a consumer who was represented by counsel.

(Compl. ¶¶ 11-12, 15.) [Dkt 1.] The parties have consented to the jurisdiction of a Magistrate Judge

pursuant to 28 U.S.C. § 636(c). [Dkt 12, 13.]  Both Ross and RJM have moved for summary

judgment. [Dkt 22, 36.] The issues on the motions are whether RJM violated the FDCPA and, if

so, whether RJM is shielded from liability by the bona fide error affirmative defense. For the reasons

set forth below, Ross' motion for summary judgment is denied and RJM's motion for summary

judgment is granted.

## FACTUAL BACKGROUND[1]

---

[1] The following facts are taken from the parties' responses to the respective statements of
fact filed pursuant to Local Rule 56.1, which are cited herein as: "Pl.'s LR Resp. ¶ __" [dkt 47]
and "Def.'s LR Resp. ¶ __" [dkt 39], and from the exhibits submitted with those statements, the
responses to those statements, or legal memoranda, which are cited herein as: "Pl.'s LR Ex. __"

## A.     The Parties

RJM is a Delaware limited liability company that purchases delinquent charged-off consumer

debts. (Pl.'s LR Resp. ¶ 1.)[2]  RJM admits that it acts as a debt collector, as defined by § 1692a of

the FDCPA, because it regularly uses the mail to collect, or attempt to collect, consumer debts.

(Def.'s LR Resp. ¶ 4.)

Ross has lived at 305 East 77th Street in Chicago for nine years. (Pl.'s LR Ex. A, Aff. Delisa

Ross ("Ross Aff.") ¶ 1.)   Ross admits that she owed $574.72 to Fingerhut Credit Advantage

("Fingerhut") on account No. 17389064439 for the purchase of consumer goods.  (*Id.* ¶¶ 3, 5.)

Although that debt was listed under the name "Lisa Ross" (Pl.'s LR Ex. H), Ross states that her first

name is "Delisa" and she does not use "Lisa" as an alias (Ross Aff. ¶ 2).

## B.     RJM's Purchase of Ross' Account and Plaza's Attempt to Collect

On August 12, 2002, RJM purchased Ross' account from Fingerhut as part of an Asset

Purchase Agreement in which Federated Department Stores ("FDS") guaranteed certain of

---

[dkt 24], "Def.'s LR Ex. __" [dkt 37], "Pl.'s LR Resp. Ex. __" [dkt 47], "Def.'s LR Resp. Ex. __" [dkt 39].  Statements not responded to or not controverted by specific references to the record are deemed admitted.  L.R. 56.1(b)(3).

[2]  The parties each included additional facts in their responses to each other's L.R. 56.1(a) statements.  That practice is improper under the rule, and statements contained in responses that go beyond what is necessary to justify a denial will not be considered.  *See Hamilton v. O'Connor Chevrolet*, 399 F. Supp. 2d 860, 862-63 (N.D. Ill. 2005); *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (quoting *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) that Rule 56.1(b)(3)(B) "provides the *only* acceptable means of . . . presenting additional facts").

Both parties also included legal conclusions and arguments in their responses to each other's LR statements.  That practice likewise is not proper.  *Malec*, 191 F.R.D. at 584 (stating that "a Rule 56.1(b)(3)(A) response is not the place for purely argumentative denials").  Accordingly, such argument and legal conclusions will be disregarded.

Fingerhut's obligations. (Def.'s LR Resp. ¶ 26; Pl.'s LR Ex. L, Asset Purchase Agreement.) The Asset Purchase Agreement recites Fingerhut's belief that the statute of limitations may have run on most, if not all, of the receivables subject to the Agreement, and RJM's acknowledgment that no representations were made about the accuracy or completeness of the account information Fingerhut provided. (*Id.*) However, it also expressed Fingerhut's intention not to transfer accounts that had been discharged in bankruptcy:

> Accounts Sold 'As Is' . . . Notwithstanding the foregoing, the Buyer and the Seller (i) recognize their respective obligations not to attempt to collect or to collect a debt that has been discharged in bankruptcy, (ii) have not and will not intentionally attempt to collect or collect debt that has been discharged in bankruptcy, and (iii) acknowledge that the Seller does not intend to transfer and the Buyer does not intend to buy Accounts that have been discharged in bankruptcy.

(Asset Purchase Agreement ¶ 2(e).) The parties agreed to notify each other immediately of any claim or threatened claim that was discovered. (*Id.* at ¶ 9.)

In September 2002, RJM retained Plaza Associates ("Plaza"), an independent contractor that collects debts on behalf of creditors, to collect the debt owed by "Lisa Ross." (Pl.'s LR Resp. ¶ 17.) On May 5, 2003, Plaza sent letter addressed to "Lisa Ross" to Ross' address in Chicago, on behalf of RJM, in an attempt to collect the debt in the amount of $574.72 on Fingerhut account number 17389064439. (Pl.'s LR Ex. B; Def.'s LR Resp. ¶ 9.) That letter referred to control number 25625510-10, and identified the creditor as "RJM Acquisitions Funding LLC, Assignee of Fingerhut." (Pl.'s LR Ex. B.)

## C.    Ross' Bankruptcy Filing

On June 20, 2003, Ross filed a voluntary Chapter 7 bankruptcy petition listing her address as 305 East 77th Street, Chicago, Illinois 60619. (Def.'s LR Resp. ¶ 5.) The controversy in this case

is rooted in Ross' filings with the Bankruptcy Court.

The name "Lisa Ross" was not listed on Ross' bankruptcy petition. (Pl.'s LR Resp. ¶ 20.)[3]
To date, Ross denies ever using the name Lisa Ross to obtain credit. (Id. ¶ 24.) On the Schedule F
of her bankruptcy petition, Ross listed an account number 17389064439, with control number
25625510-10 (the same as on Plaza's May 2003 collection letter) for a credit card debt in the amount
of $574.72 owed to "Creditor # 20," which was described as " Fingerhut Credit Advantage c/o Axsys
National Bank." (Compl., Ex. A at 5 of 10.) It is not clear why Ross listed Axsys National Bank.
Axsys did not service that account (Def.'s LR Ex. A, Aff. Scott Matte ("Matte Aff.") ¶ 12), and is
not mentioned in Plaza Associates' May 2003 letter (P.'s LR Ex. B).[4]  Ross also listed "*RMA
Acquisitions Funding LLC c/o Plaza Associates*" as "representing" Fingerhut on that account.
(Compl., Ex. A at 5 of 10 (emphasis added).) On June 26, 2003, notice regarding Ross' bankruptcy
petition was sent to "Fingerhut Credit Advantage, c/o RMA Acquisitions Funding LLC, c/o Plaza
Associates" and "Fingerhut Credit, c/o Axsys National Bank." (Id., Ex. B at 1of 2.) On October 2,
2003, Plaza closed its file on Lisa Ross, and electronically returned the file to RJM at a later time.
(Pl.'s LR Resp. ¶ 18; Matte Aff. ¶ 21.)[5]

Delisa Ross received a discharge by the Bankruptcy Court on October 17, 2003. (Compl.,

---

[3]  Although Ross denies that statement (Pl.'s LR Resp. ¶ 20), it is apparent that the
bankruptcy petition did not list the name "Lisa Ross" (Compl., Ex. B).

[4]  Ross states that she and her bankruptcy counsel "believed" that Axsys serviced
Fingerhut accounts. (Pl.'s Reply at 3.) [Dkt 48]

[5]  Ross points out that RJM's computer system was not working until March 2004, and
that computer records related to accounts were only later imported to RJM's system. (Pl.'s LR
Resp. ¶ 18.) However, that is not significant. It is undisputed that Plaza closed its file on Ross in
October 2003 (Matte Aff. ¶ 21), and there is no evidence of any collection attempts by Plaza
other than the May 3, 2003 letter. The collection letters at issue in this case were sent by RJM in
2004, not by Plaza. (*See* Def.'s LR Resp. ¶ 12.)

Ex. C.) Notice of that discharge was sent to "Fingerhut Credit Advantage, c/o RMA Acquisitions Funding LLC, c/o Plaza Associates" and "Fingerhut Creidt, c/o Axsys National Bank." (*Id.*)

## D.    RJM's 2004 Letters

On June 15, 2004 and August 3, 2004, RJM sent letters addressed to "Lisa Ross" making special offers if "Lisa Ross" paid a "balance due" of $574.72. (*Id.* Exs. D and E.) The letters referred to the same account number and control number (called "RJM file number") listed on Ross' bankruptcy petition. (*Id.*) RJM was not aware that "Delisa Ross" had filed for bankruptcy and retained counsel until her attorney called on October 6, 2004. (Pl.'s LR Resp. ¶ 22.)[6] Once RJM became aware that Ross had filed for bankruptcy and retained counsel, RJM stopped attempting to collect the debt and did not contact Ross again. (*Id.* ¶ 23; Pl's LR Ex. E.)

## E.    RJM's Debt Collection Practices

RJM states that it had five procedures in place to avoid collecting on accounts that had been discharged in bankruptcy. (Def.'s LR Stmt. ¶¶ 4-9.) [Dkt 26.] Ross' response does not point to evidence creating a genuine issue of fact regarding whether RJM had the five procedures described. (*See* Pl.'s LR Resp. ¶¶ 4-9.) Ross' arguments disputing whether the procedures are reasonable do not qualify as denials of the facts. Accordingly, MSI's statements are deemed admitted.

---

[6] Ross denies that statement, arguing that Matte's affidavit actually lists October 2002 as the date RJM became aware of Ross' bankruptcy. (Pl.'s LR Resp. ¶ 22.) However, the October 2002 date is obviously a typographical error because Ross' bankruptcy petition was not filed until June 20, 2003. (*See* Def.'s LR Resp. ¶ 5.) Furthermore, RJM's records are consistent with its statement. (*See* Pl.'s LR Ex. E.) Because Ross cites no other evidence (as opposed to argument) contradicting the statement, the statement will be deemed admitted.

L.R. 56.1(b)(3).

The first and second procedures are based on the Asset Purchase Agreement:  The seller (Fingerhut, whose obligations were guaranteed by FDS) agreed that it would not transfer to RJM any accounts that had been discharged in bankruptcy (*id.* ¶ 5), and the seller also agreed to notify RJM if it received a notice of any claim that might affect RJM (*id.* ¶ 6).

The third procedure was RJM's internal policy, described by Scott Matte, the President of RJM since 2001, to cease all collection attempts upon learning that a debtor had filed for bankruptcy, and to cease all communications with a debtor that had retained counsel.  (*Id.* ¶ 7; Matte Aff. ¶¶ 2, 4, 8.)  According to Matte, RJM's collection software system includes a field for "collector's notes" in which RJM's collectors document all the activity that has occurred on a particular account. (Matte Aff. ¶ 14.)[7]  RJM uses that field to keep track of, among other things, all letters sent to or received from debtors and telephone calls received from or made to debtors.  (*Id.*)  RJM collectors are required to make a notation in the notes field of any communication, written or oral, with a debtor or anyone acting on behalf of a debtor, such as an attorney.  (*Id.*)  The collector's notes on Ross' account show that on October 4, 2002, RJM had a bankruptcy search conducted on Ross' account. (Pl.'s LR Ex. E; Matte Aff. ¶ 16.)   Those notes further show that RJM did not receive a communication from Ross' attorney until October 6, 2004.  (Pl.'s LR Ex. E.)  The notes also show that RJM stopped collection efforts immediately after receiving that contact.  (*Id.*)

---

[7] Matte's affidavit establishes, and Ross has not disputed,  that the collector's notes qualify as business records pursuant to Fed. R. Evid. 803(6).  (Matte Aff. ¶ 15.)  Ross argues that RJM has not produced all the documents relating to RJM's "collector's notes," citing Matte's testimony at his deposition that there are multiple "screens" for information.  (Pl.'s Resp. at 3-4.) [Dkt 47.]  However, RJM maintains that it has produced all such documents, and that the information Ross suggests should have been produced does not exist as a document but rather would be available only by compiling different "screens." (Def.'s Resp. at 8-9 n. 4.)  [Dkt 40.]

Fourth, RJM had an oral agreement with its third party debt collector Plaza, that Plaza would notify RJM of any bankruptcy notices that it received on any of RJM's accounts. (Matte Aff. ¶ 10; Def.'s LR Resp. ¶ 10.) Matte was the Senior Vice President of Plaza prior to April 2004. (Matte Aff. ¶ 17.) He states in his affidavit that if Plaza received a bankruptcy notice that it knew related to an account RJM was attempting to collect, Plaza's business practice was to forward the bankruptcy notice to RJM. (*Id.* ¶ 22.) Matte states that, based on his review of RJM's records pertaining to Ross' account, RJM did not receive any bankruptcy notices from Plaza relating to Ross' account. (*Id.* ¶ 23.)

Fifth, RJM conducted an ongoing search of bankruptcy filings before attempting to collect on an account in order to determine if a debtor had filed for bankruptcy protection. (Def.'s LR Resp. ¶ 8-9.) As evidence of that procedure, RJM submits the affidavit of Todd Feige, the Executive Vice President of Phin Solutions Inc., a Minnesota corporation that conducts bankruptcy searches for debt collectors. (Def.'s LR Resp. ¶ 19; Pl.'s LR Ex. I, Aff. Todd Feige ("Feige Aff.").) Phin Solutions maintains a database of bankruptcies filed in the United States dating back to 1997. (Feige Aff. ¶ 6.) Phin Solutions does not itself conduct bankruptcy searches, but rather uses a service (an independent company) that logs on to PACER[8] each week, Tuesday through Saturday, and downloads the information on the bankruptcy filings filed across the United States. (Def.'s LR Resp. ¶ 20.) Phin Solutions receives electronic updates nightly for all bankruptcy filings from that day. (Pl.'s LR Resp. ¶ 10.) It compares that information to all of its accounts. (Def.'s LR Resp. ¶ 20; Feige Aff. ¶ 8.)

---

[8] PACER ["Public Access to Court Electronic Records"] is "an electronic public access service that allows users to obtain case and docket information from Federal Appellate, District and Bankruptcy courts, and from the U.S. Party/Case Index." Administrative Office of the U.S. Courts, *PACER Service Center, Overview*, http://pacer.psc.uscourts.gov/pacerdesc.html (accessed March 15, 2006).

Phin Solutions also receives bankruptcy notices on behalf of RJM directly from the bankruptcy courts through electronic bankruptcy notices when RJM is listed as a creditor. (Feige Aff. ¶ 7.)

RJM hired Phin Solutions in March 2004 to conduct a bankruptcy search on "Lisa Ross" at 305 East 77th Street, Chicago, IL 60619. (Def.'s LR Resp. ¶ 21; Pl.'s LR Resp. Ex. B, Dep. Todd Feige ("Feige Dep.") at 20.) Phin Solutions compared the information provided by RJM to its own database. (Def.'s LR Resp. ¶ 21.) It performed an "historical scrub" on RJM's accounts to look for bankruptcies in the past, and then looked for matches from that point on. (Feige Dep. at 20-21.) Phin Solutions found no record of a "Lisa Ross" filing for bankruptcy as of October 4, 2004. (Def.'s LR Resp. ¶ 21.) Phin Solutions continued to compare RJM's account information regarding Lisa Ross to the daily updates it received regarding bankruptcy filings in the United States each business day. (Feige Aff. ¶ 12.) In December 2004, Phin Solutions conducted a bankruptcy search specifically on Lisa Ross, but found no record that Lisa Ross filed for bankruptcy. (*Id.* ¶ 13.) Feige states that Phin Solutions would have found a bankruptcy record for "Delisa Ross" if it had searched for Delisa Ross rather than Lisa Ross. (*Id.* ¶ 14.)

## LEGAL STANDARD

The court may properly grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court

must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Id.* at 255. The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met the initial burden, the non-moving party must designate specific facts showing that there is a genuine issue for trial. *Id.* at 324. The non-moving party must support its contentions with admissible evidence and may not rest upon the mere allegations in the pleadings or conclusory statements in affidavits. *Id.* *See also Winskunas v. Birnbaum*, 23 F.3d 1264, 1267 (7th Cir. 1994) (non-moving party is required to present evidence of "evidentiary quality" (*i.e.*, admissible documents or attested testimony, such as that found in depositions or in affidavits) demonstrating the existence of a genuine issue of material fact). "[N]either 'the mere existence of some alleged factual dispute between the parties' . . . nor the existence of 'some metaphysical doubt as to the material facts,' is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (quoting *Anderson*, 477 U.S. at 247 and *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Thus, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## DISCUSSION

Ross claims that RJM's attempt to collect a debt that had been discharged in bankruptcy was false, deceptive or misleading, in violation of § 1692e of the FDCPA, and was an improper communication with a consumer represented by counsel, in violation of § 1692c(a)(2) of the

FDCPA. (Pl.'s Mem. at 2.) [Dkt 24.] RJM argues that it is entitled to the bona fide error defense under § 1692k. (Def.'s Resp. at 1; Def.'s Mem. at 1, 3 [dkt 38].)[9]

## I.      Whether RJM Violated the FDCPA

Under the FDCPA, a debt collector is subject to civil liability if he "use[s] any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, or if he communicates with the consumer "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address . . . ." 15 U.S.C. § 1692c(a)(2). "[T]he [FDCPA] is a strict liability statute," and "proof of one violation is sufficient to support summary judgment" for the plaintiff. *Berndt v. Fairfield Resorts, Inc.*, 337 F. Supp. 2d 1120, 1131 (W.D. Wis. 2004) (citations omitted).

### A.      § 1692e

Ross argues that the letters RJM sent on June 15, 2004 and August 3, 2004 were indisputably false because that debt had been discharged in bankruptcy. (Pl.'s Mem. at 3.) RJM does not definitively deny that its actions violated the FDCPA in this regard, but rather argues that it is not liable because of the bona fide error defense.[10]

---

[9] RJM also asserts that Ross does not have standing to bring a FDCPA claim against RJM (Def.'s Mem. at 3), but never provides any argument or support for that proposition. Therefore, that argument will not be considered.

[10] In a footnote, RJM argues that it "likely" did not violate § 1692e(2)(A) because Ross failed to discharge the debt. (Def.'s Resp. at 4 n. 1.) However, that argument was raised only in a footnote and thus will not be considered. *See El Ranchito, Inc. v. City of Harvey*, 207 F. Supp. 2d 814, 822 (N.D. Ill. 2002) (court may treat argument raised in a footnote as waived) (citing

§ 1692e prohibits "false, deceptive or misleading" collection activities, and more specifically prohibits the "false representation" of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). "§ 1692e(2)(A) creates a strict-liability rule. Debt collectors may not make false claims, period." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004). Ignorance is no excuse; the provision applies "even when a false representation was unintentional." *Turner v. J.V.D.B. & Assocs.*, 330 F.3d 991, 995 (7th Cir. 2003) (quoting *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000)); *see also Randolph*, 368 F.3d at 728 (stating that a "debt collector's false statement is presumptively wrongful" under § 1692e(2)(A) even if the speaker is ignorant of the truth).

It is undisputed that Ross filed for bankruptcy protection on June 20, 2003, and received a discharge from the bankruptcy court on October 17, 2003. Although RJM's letters of June 15, 2004 and August 3, 2004 are phrased as an "offer" and an invitation to RJM's "gift/reward program" (Compl., Exs. D and E), RJM admits that they were an attempt to collect the Fingerhut debt (Def.'s LR Resp. ¶ 12.). Thus, RJM attempted to collect a debt that had been discharged in bankruptcy. Because, as discussed below, RJM is entitled to the bona fide error defense, the court will assume that RJM's attempt to collect that debt was a "false representation" of "the character, amount, or legal status" of the debt, in violation of 15 U.S.C. § 1692e(2)(A), even though RJM may have been unaware at the time that the debt was discharged in bankruptcy. *See e.g., Randolph*, 368 F.3d at 728.

**B.    § 1692c**

---

*Dresser Indus., Inc. v. Gradall Co.*, 965 F.2d 1442, 1448 (7th Cir. 1992.) Therefore, for the purpose of these motions, the court will assume that Ross was discharged from the debt.

Ross also claims that RJM violated § 1692c by communicating with a consumer represented by counsel. (Pl.'s Mem. at 2.)  § 1692c(a)(2) provides in relevant part:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt– . . . (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address . . . .

RJM argues, first, that it did not violate § 1692c(a)(2) because at the time it sent the letters it had no actual or imputed knowledge that Ross was represented by counsel, and, second, that even if it technically violated  § 1692c(a)(2), the bona fide error defense applies (Def.'s Resp. at 10-13). Because, as discussed below, RJM is entitled to the bona fide error defense, it is unnecessary to consider whether Ross has proven a violation of § 1692c.


## II.    Whether RJM Is Entitled to the Bona Fide Error Defense of § 1692k(c)

The FDCPA affords debt collectors an affirmative defense, the so-called "bona fide error" defense: "[a] debt collector may not be held liable [under the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).  Thus, to qualify for the bona fide error defense, RJM must prove by a preponderance of the evidence that:  (1) the FDCPA violation was unintentional, resulting from a bona fide error; and (2) the error occurred notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. *Turner*, 330 F.3d at 997; *see also Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005) (citing *Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir. 1997)).  Under the bona fide error defense, a debt collector need only show that the FDCPA violation

-12-

was unintentional, not that its actions were unintentional. *Kort*, 394 F.3d at 537.[11]

### A.   Whether RJM's FDCPA Violation Was Unintentional, Resulting from a Bona Fide Error

RJM argues that it did not intend to violate the FDCPA, and was unaware that Ross had filed for bankruptcy protection when it sent the debt collection letters. (Def.'s Mem. at 6, 14.) It was Ross' own errors in her bankruptcy petition, RJM argues, that prevented RJM from receiving notice of her bankruptcy and prevented it from finding her bankruptcy through its bankruptcy searches. (*Id.*)

A bona fide error is "an error made in good faith; a genuine mistake, as opposed to a contrived mistake." *Kort*, 394 F.3d at 538. Evidence that a debt collector was unaware of the bankruptcy petition supports a finding that his violation was unintentional. *See Turner*, 330 F.3d at 996 (stating that "proof that [the defendant] was unaware of the bankruptcy would be a logical first step" in establishing the bona fide error defense). As mentioned above, a debt collector need only show that his FDCPA *violation* was unintentional, not that his *actions* were unintentional. *See Kort*, 394 F.3d at 537.

Here, RJM has demonstrated that its error was bona fide and its violation of the FDCPA was

---

[11] In her response brief, Ross argues that RJM's bona fide error defense should be stricken because RJM has wrongly withheld evidence and has failed to comply with its discovery obligations under Rules 26, 33, and 34 of the Federal Rules of Civil Procedure. (Pl.'s Resp. at 4.) RJM denies that it failed to comply with its discovery obligations. (Def.'s Resp. at 8-9.) Ross did not bring a motion pursuant to Fed. R. Civ. P. 37 seeking sanctions or a motion for relief pursuant to Rule 56(f), but instead filed a motion for summary judgment. Accordingly, the court will not rule on that argument, but will rather consider the evidence the parties have presented on their cross-motions for summary judgment in accordance with the standards of Fed. R. Civ. P. 56.

unintentional.  RJM was unaware that Delisa Ross had filed for bankruptcy until contacted by her attorney after the June and August 2004 letters were sent.  Phin Solutions' search of the bankruptcy records did not disclose that the debt was discharged.  As soon as RJM learned that Ross' debt had been subject of a bankruptcy filing, it ceased all collection activity.  RJM has satisfied the first element of the bona fide error defense.


**B.      Whether RJM Maintained Procedures Reasonably Adapted to Avoid the Error**

As discussed above, RJM had five procedures in place to prevent collection attempts on accounts that had been discharged in bankruptcy.  The issue is whether these procedures were reasonably adapted to avoid the error.

Ross disputes that RJM's procedures are reasonable.  Ross argues that:  (1) pursuant to the agreement with FDS, RJM was on notice that the account information provided to RJM may have been old or incomplete; (2) RJM's agreement with Plaza was flawed because Plaza did not connect the bankruptcy notice Plaza  received regarding Delisa Ross, which listed the same address as that of Lisa Ross from whom RJM was attempting to collect a debt; (3) the agreement with Phin Solutions should not be considered because RJM did not hire Phin Solutions until March 2004, even though RJM obtained Ross' account in August 2002; and (4) Phin Solutions' search system used was insufficient because it failed to relate the bankruptcy filing of Delisa Ross with the account of Lisa Ross.

The bona fide error defense "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort*, 394 F.3d at 539 (citation omitted).  Debt collectors are not required to "independently verify the validity of the

-14-

debt," or "independently research each account." *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004).

Although RJM acknowledged that the accounts it purchased from FDS were old and might contain errors, the Asset Purchase Agreement provided that accounts subject to bankruptcy would not be transferred.  (Asset Purchase Agreement ¶ 2(e).)  The presence of such an agreement is a factor to be considered in deciding whether adequate procedures were in place to avoid errors. *See e.g.*, *Hyman*, 362 F.3d at 967 (holding that debt collector's reliance on its creditor not to refer accounts that are in bankruptcy, which was based on an "understanding" with the creditor, was a procedure reasonably adapted to avoid erroneous collection efforts).

RJM also had an oral agreement with Plaza to notify RJM of any bankruptcy notice it received, retained Phin Solutions to conduct a bankruptcy search prior to sending the letters at issue here, and ceased collection efforts when it became aware that the debt had been discharged in bankruptcy. *See Hyman*, 362 F.3d at 967-68 (holding that the defendant's procedures, which included "immediate cessation of collection efforts once [the defendant] learns of a bankruptcy filing," were adequate, and noting that any potential harm to the debtors would be "slight").  Ross argues that Matte and Feige's affidavits and testimony about these procedures should be disregarded or viewed with considerable skepticism. (Pl.'s Resp. at 7-10.)  However, in considering a motion for summary judgment, the court does not determine credibility.  The court determines whether the moving party has carried its initial burden to demonstrate that judgment as a matter of law should be granted in its favor, and, if so, whether there is whether there is *admissible evidence* that would permit a reasonable fact finder to find in favor of the non-movant. *See* cases cited above.

Many of Ross' complaints are about minor discrepancies in Matte and Feige's affidavits and testimony. *(See e.g.*, n.6 above, regarding the obvious typographical error in Matte's affidavit.)  In

other instances, Ross is dissatisfied with the documentation RJM provided. For example, Ross notes that Matte did not identify any *written* policy that RJM had regarding handling of bankruptcy notices. (Pl.'s LR Resp. ¶ 7.) However, while focusing on these minor points, Ross fails to present evidence demonstrating a genuine issue about existence of the procedures to which Matte and Feige testified.

Ross' arguments that RJM's procedures are not reasonable boil down to the fact that the procedures did not prevent RJM from sending collection notices to "Lisa Ross" in June and August 2004 in an effort to collect a debt from which "Delisa Ross" had been discharged in October 2003. However, the procedures are not unreasonable simply because they failed to correct for Ross' own mistakes and omissions in her bankruptcy filings.

Ross' bankruptcy filings incorrectly listed the owner of the debt that Plaza Associates was trying to collect as "RMA Acquisitions Funding, LLC" rather than "RJM Acquisitions Funding LLC," the entity identified on the demand letter she had received. RJM's oral agreement with Plaza Associates to forward bankruptcy notices to RJM cannot be deemed unreasonable simply because Plaza or RJM failed to detect and correct Ross' error.

Ross filed for bankruptcy less than 60 days after receiving a collection letter addressed to "Lisa Ross." She knew that the debt collector on the Fingerhut debt identified her as "Lisa Ross," but she never listed the name "Lisa Ross" on her bankruptcy filing seeking discharge from that debt. Ross has never explained why a debt she admits she owed was in the name "Lisa Ross," a name she claims she never uses. She has not suggested or presented any evidence that she made any effort to correct her name on the records of Fingerhut or Plaza Associates.

Ross criticizes Phin Solutions' search of bankruptcy records, particularly Feige's statement

-16-

that "Phin Solutions had no record of a Lisa Ross filing for bankruptcy as of October 4, 2004." (Feige Aff. ¶ 11.) Ross submits records from her counsel's own search on the website of the United States Bankruptcy Court for the Northern District of Illinois, showing that at least five individuals named "Lisa Ross" have filed for bankruptcy since 1995, and that two of these individuals listed a debt to Fingerhut in their bankruptcy petitions. (Def.'s LR Resp. ¶ 23; Pl.'s LR Ex. J.) However, Ross' criticism of Feige is based on a misreading of Feige's affidavit. As Feige states, Phin Solutions was hired to conduct a bankruptcy search for "a Lisa Ross" with the address of 305 East 77th St, Chicago, Illinois 60619. (Feige Aff. ¶ 9) A fair reading of his affidavit is that his subsequent statements regarding Phin Solutions' search for "Lisa Ross" relate to a search for that "Lisa Ross," not any "Lisa Ross." (*See id.* ¶¶ 10, 11.) Notably, the bankruptcy records found by Ross' counsel do not show any Lisa Ross at 305 East 77th Street, Chicago, IL 60619, nor do they include Delisa Ross' bankruptcy. (Pl.'s LR Ex. J.) In response, RJM submits records from its own search of bankruptcy records on July 25, 2005, showing that a search for the last name "Ross" and first name "Lisa" yields nine matches, but did not bring up records of Delisa Ross' bankruptcy filing. (Def.'s LR Resp. Ex. 2.)

Ross also submits records showing that that a search for the last name "Ross" and the first name "*lisa," (*i.e.,* "lisa" preceded by other letters) yields 15 matches, including "Delisa Ross." (Pl.'s LR Ex. K.) However, the court declines to adopt Ross' suggestion that the FDCPA requires a bankruptcy search involving variations on a name or other criteria. The bankruptcy schedules require the debtor to list all names used by the debtor in the past 6 years. (*See* Compl. Ex. A.) A debt collector or its agent searching bankruptcy records is not unreasonable in expecting that the debtor will list any name under which a debtor has incurred a debt that is to be discharged.

-17-

Significantly, the FDCPA requires only reasonable procedures; it does not necessarily require any search of bankruptcy records. *See Hyman*, 362 F.3d at 968 (finding the FDCPA does not require independent verification of the validity of a debt). RJM's procedures are reasonably adapted to avoid the error of attempting to collect on a debt that had been discharged in bankruptcy. That they failed to prevent the two collection letters sent to Lisa Ross in the unusual circumstances of this case does not demonstrate that they were not reasonable.

## CONCLUSION

For the foregoing reasons, Ross' motion for summary judgment is denied and RJM's motion for summary judgment is granted. Judgment is entered in favor of the defendant and against the plaintiff. Costs pursuant to 28 U.S.C. § 1920 are awarded to the defendant.

**IT IS SO ORDERED.**

**Geraldine Soat Brown**
**United States Magistrate Judge**

**March 16, 2006**