UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DELISA ROSS,<br>        Plaintiff,<br><br>    v.<br><br>RJM ACQUISITIONS FUNDING, LLC,<br>        Defendant. | Case No. 04 C 6557<br>Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

Plaintiff Delisa Ross ("Ross") filed suit alleging that Defendant RJM Acquisitions Funding LLC ("RJM") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. [Dkt 1.] Both Ross and RJM moved for summary judgment. [Dkt 22, 27, 36.] On March 16, 2006, this Court granted RJM's motion for summary judgment and awarded RJM its costs pursuant to 28 U.S.C. § 1920(2). [Dkt 58.] RJM subsequently filed a motion for sanctions against Ross' attorneys pursuant to 28 U.S.C. § 1927 and for attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3). [Dkt 60.] RJM also filed its Bill of Costs. [Dkt 66.] Ross has filed an objection to the Bill of Costs. [Dkt 68.] Before the Court now is RJM's motion for sanctions and Ross' objection to RJM's Bill of Costs. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Dkt 12, 13.] For the reasons set forth below, RJM's motion for sanctions is denied, and Ross' objection to RJM's Bill of Costs is also denied.

# FACTUAL BACKGROUND[1]

On October 12, 2004, Ross filed a complaint alleging that RJM attempted to collect a debt from her that had been discharged in bankruptcy, in violation of the FDCPA. (Compl. ¶ 15.) In a letter dated November 16, 2004, RJM's counsel advised Ross' attorneys of RJM's belief that the claim was without merit pursuant to the bona fide error defense provided by 15 U.S.C. § 1692k(c). (Def.'s Mot. Ex A at 1.) RJM's attorney explained that RJM uses a firm named "Finn Solutions" to conduct bankruptcy searches and those searches are performed "upon its initial purchase of each debt and every business day thereafter while the debt is in its system." (*Id*. at 2.) The letter cited an affidavit by Samir Shah, RJM's CFO, which was not enclosed with the letter. (*Id*.; Def.'s Mot. at 3.) Ross' counsel, in response, stated that he could not evaluate RJM's bona fide error defense without all of the exhibits that were referenced in RJM's letter, and that he would need copies of the account histories for Ross that were maintained by RJM and Plaza Associates (RJM's debt collector), as well. (Def.'s Mot. Ex. B at 1.)

On November 29, 2004, RJM's counsel sent the exhibits that had been omitted from her previous letter, except that she substituted the affidavit of Scott Matte, RJM's President, for the affidavit of Mr. Shah referenced in her previous letter. (Def.'s Mot Ex. C at 1.) Mr. Matte's affidavit stated that RJM conducts ongoing bankruptcy searches every day, but Mr. Matte did not make any reference to "Finn Solutions," the entity that purportedly conducted the bankruptcy searches for RJM. (Def.'s Mot. Ex. C, Matte Aff. ¶ 7.) Shortly thereafter, RJM's counsel again requested that Ross dismiss the suit, reiterating that RJM conducted bankruptcy searches regarding Ross' account. (Def.'s Mot. Ex. D at 1.) In that letter, RJM's counsel also enclosed

---

[1] The facts recited are those relevant to the present motion and objection before the Court. For additional discussion of the factual background of this case, *see Ross v. RJM Acquisitions Funding, LLC*, No. 04 C 6557, 2006 WL 752953 at *1-4 (N.D. Ill. Mar. 16, 2006) (Brown, M.J.).

RJM's collector notes, presumably in response to Ross' attorney's request for Ross' account histories. (*Id.*) In a response to that letter, Ross' counsel stated that Mr. Matte's statement that "RJM conducts ongoing and continual bankruptcy checks everyday" was not sufficient to prove the bona fide error defense. (Def.'s Mot. Ex. E at 2.) Ross' counsel also identified several problems he perceived with the evidence provided by RJM's counsel thus far in support of the defense. (*Id.*) Specifically, he indicated that he still had not received the affidavit of Mr. Shah which had been omitted from RJM's November 16th letter; that he found no evidence of a "Finn Solutions"; and that the single page of collector notes provided fell "far short of the complete account histories [] requested." (*Id.*) Ross' counsel concluded by requesting a complete account of the daily bankruptcy searches RJM claimed to conduct. (*Id.* at 3.) On December 20, 2004, RJM's attorney advised Ross' attorney that her failure to provide Mr. Shah's affidavit was an "oversight" and that she had submitted Mr. Matte's affidavit in its place after concluding that Mr. Matte was more knowledgeable about the facts of the case. (*See* Def.'s Mot. Ex. G at 3.)[2]

On February 15, 2005, Ross' counsel apparently requested additional documentation from RJM (*see* Def.'s Mot. Ex. F at 2), and RJM's counsel provided several documents in response, including: a "Fingerhut Statement for: Lisa Ross" and an affidavit by Todd Feige, the Vice President of Phin Solutions (not "Finn" Solutions, as stated in the November 16th letter), who testified about the bankruptcy searches performed on the Ross account. (*Id.* at 1, 2.)[3] In the letter enclosing those documents, RJM's counsel reiterated her argument that RJM was entitled to the bona fide error defense, stating that "RJM has reasonable procedures in place to avoid

---

[2] In a subsequent letter, Ross' counsel asserted that he never received any letter providing such explanation. (Pl.'s Resp. Ex. A at 2.) [Dkt 78.]

[3] Fingerhut is the entity from whom RJM purchased Ross' account as part of an Asset Purchase Agreement. *Ross*, 2006 WL 752953 at *1.

collecting on an account in which the debtor has filed bankruptcy." (*Id*. at 1.) RJM's counsel cited the case of *Hyman v. Tate*, 362 F.3d 965 (7th Cir. 2004), in support. (*Id*.)

The exchange of information and arguments continued into March and April 2005. In a letter dated March 29, 2005, RJM's counsel provided the Asset Purchase Agreement between RJM and Fingerhut which outlined two of the procedures RJM was relying on to support its bona fide error defense. (Def.'s Mot. Ex. G at 1.) Specifically, the Agreement stated that Fingerhut would not sell any accounts that had been discharged in bankruptcy, and would notify RJM if it received notice of any claim that might affect RJM. *Ross*, 2006 WL 752953 at *3; *see also* Def.'s Mot. Ex. G at 2. That letter also outlined RJM's agreement with Plaza to handle bankruptcy notices on RJM accounts, including Plaza's agreement to forward all bankruptcy notices on RJM accounts to RJM. (Def.'s Mot. Ex. G at 2.) In addition, RJM's counsel provided more detailed information regarding the bankruptcy search that had been conducted on the Ross account. (*Id*.)

On April 4, 2005, Ross' attorney again requested Ross' entire account history (stating that the collector notes were "clearly incomplete"), and identified additional claimed deficiencies with the evidence provided by RJM in support of its defense, such as the fact that the Asset Purchase Agreement referenced exhibits which had not been included with the Agreement. (Pl.'s Resp. Ex. A at 1.) He also argued that the affidavits provided by RJM in support of its defense were self-serving and contained false statements and inadmissible hearsay. (*Id*.)

In June 2005, Ross filed a motion for summary judgment, and in July 2005, RJM filed a motion for summary judgment.[4] Attached to RJM's motion for summary judgment was a supplemental affidavit by Mr. Matte stating that RJM has an internal policy of ceasing all

---

[4] RJM filed a second motion for summary judgment and amended memorandum in support in August 2005. [Dkt 36, 37, 38.]

collection efforts upon learning of a bankruptcy filing. (Def.'s Mem. Supp. Summ. J. Ex. I [dkt 28, 38]; *see also* Def.'s Reply at 9 [dkt 81].) The Court granted summary judgment in favor of RJM based on its conclusion that RJM was entitled to the bona fide error defense. *See Ross*, 2006 WL 752953 at *7-9. In deciding the motion, the Court noted five procedures reasonably adapted by RJM to avoid collecting on a debt subject to a bankruptcy proceeding. *Id.* at *3.

RJM has now filed a motion for sanctions. In its motion, RJM argues that Ross' attorneys multiplied the proceedings in this lawsuit unreasonably and vexatiously in violation of 28 U.S.C. § 1927 by pursuing a meritless lawsuit and violating their duty of candor. (Def.'s Mot. at 5-12.) RJM argues that it is also entitled to its attorneys' fees and costs pursuant to § 1691k(a)(3) based on Ross' pursuit of the lawsuit in bad faith and for purposes of harassment.[5] (*Id.* at 5-6, 12-13.) In addition, RJM has filed its Bill of Costs, to which Ross has filed an objection.

**DISCUSSION**

**I. RJM's Motion for Sanctions**

**A. 28 U.S.C. § 1927**

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Section 1927 is punitive and thus must be construed strictly. *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223,

---

[5]In seeking an order granting sanctions and attorneys' fees, RJM mistakenly cites to 15 U.S.C. § 1691k(a)(3). (Def.'s Mot. at 1, 12-13.) Section 1691 of Title 15 involves the Equal Credit Opportunity Act, not the FDCPA -- the statute at issue here. The proper citation is to 15 U.S.C. § 1692k(a)(3).

226 (7th Cir. 1984). The Seventh Circuit recently stated that a court has discretion to impose § 1927 sanctions when:

> an attorney has acted in an 'objectively unreasonable manner' by engaging in 'serious and studied disregard for the orderly process of justice,' pursued a claim that is 'without a plausible legal or factual basis and lacking in justification,' or 'pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound.'

*Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (internal citations omitted). The Seventh Circuit has further stated that § 1927 imposes a "continuing duty upon attorneys to dismiss claims that are no longer viable." *Id. See also Nisenbaum v. Milwaukee County*, 333 F.3d 804, 809 (7th Cir. 2003) (stating that "[p]ressing a claim even after its emptiness becomes pellucid must be described as vexatious"). Section 1927 is violated by "[e]xtremely negligent conduct, like reckless and indifferent conduct . . . ." *Claiborne v. Wisdom*, 414 F.3d 715, 721 (7th Cir. 2005).

### 1. Meritless claim

RJM argues that sanctions pursuant to § 1927 should be imposed because Ross' attorneys multiplied the proceedings in this lawsuit by "pursu[ing] this lawsuit knowing it was without merit from the start." (Def.'s Mot. at 6.) RJM states that Ross' attorneys continued to prosecute the lawsuit after RJM had supplied them with sufficient facts indicating that it was entitled to the bona fide error defense. (*Id*. at 8.) RJM further asserts that Ross' attorneys knew Ross' claims lacked merit because "her bankruptcy petition, which they attached to the Complaint, contained multiple misrepresentations, inaccuracies, and omissions that caused RJM not to receive of Plaintiff's bankruptcy notice." (*Id*. at 6.) For instance, Ross' bankruptcy filings incorrectly listed the owner of the debt that Plaza was trying to collect, and did not list the name "Lisa

Ross," although the collection letter from Plaza was addressed to "Lisa Ross." *See Ross*, 2006 WL 752953 at *8.

The first issue to be addressed is whether Ross' attorneys multiplied the proceedings in this lawsuit unreasonably and vexatiously by pursuing a claim without a plausible legal or factual basis and lacking in justification. *Jolly Group*, 435 F.3d at 720; *Knorr Brake*, 738 F.2d at 226-27. Resolution of this issue is dependent upon whether it should have been clear to Ross' attorneys that RJM was entitled to the bona fide error defense. Pursuing a claim after it becomes clear that it cannot prevail can demonstrate a serious and studied disregard for the orderly process of justice. *Jolly Group*, 435 F.3d at 720.

To establish the bona fide error defense, a debt collector must establish that the violation resulted from an unintentional, bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. *Ross*, 2006 WL 752953 at *6. RJM relied on five procedures to prove its bona fide error defense. *Id.* at *3. RJM's first and second procedures were based on the Asset Purchase Agreement between RJM and Fingerhut (namely, that Fingerhut would not transfer any accounts that had been discharged in bankruptcy, and would notify RJM if it received notice of any claim that might affect RJM). *Id.* RJM's third procedure consisted of an internal policy to cease all collection efforts once RJM learned that a debtor had filed for bankruptcy. *Id.* RJM's fourth procedure required Plaza, the debt collector, to notify RJM of any bankruptcy notices on an RJM account, and its fifth procedure consisted of relying on Phin Solutions to conduct searches of bankruptcy filings on an ongoing basis before attempting to collect on a debt. *Id.*

RJM asserts that, based on the *Hyman* case, Ross' attorneys should have known that RJM's procedures were sufficient to enable RJM to prevail on its bona fide error defense. (Def.'s Mot. at 8.) In *Hyman*, the Seventh Circuit affirmed a district court's ruling that a debt

collector had procedures in place reasonably adapted to avoid collecting on a debt subject to a bankruptcy proceeding. 362 F.3d at 967-68. The debt collector's procedures in that case consisted of relying on the creditor not to refer debtors who were in bankruptcy, and immediately ceasing all collection efforts after learning of a bankruptcy filing. *Id.* at 967. The evidence in that case showed that of the accounts referred to the defendant for collection, only .01% were later found to have been in bankruptcy. *Id.*

RJM states that its five procedures exceed those found by the court in *Hyman* to be sufficient to establish the defense. *See* Def.'s Mot. at 8; *id.* Ex. G at 3. Although RJM ultimately demonstrated that it employed five procedures, including two of the procedures employed by the defendant in *Hyman*, the Court cannot conclude that Ross' attorneys necessarily should have known, prior to the filing of Ross' motion for summary judgment, that RJM could establish the bona fide error defense. To begin with, it was not until RJM's summary judgment filing – which was *after* Ross' summary judgment filing – that Ross obtained evidence regarding RJM's third procedure, namely, RJM's internal policy to cease collection efforts after being notified that an account was in bankruptcy. (*See* Def.'s. Mem. Supp. Summ. J. Ex. I; *see also* Def.'s Reply at 9.)[6] That procedure was one of the two procedures relied upon by the defendant in *Hyman*. Thus, at the time Ross' motion for summary judgment was filed, Ross' counsel could not have known that the same two procedures employed by the defendant in the *Hyman* case were also employed by RJM.[7]

---

[6] Again, that fact was detailed in Mr. Matte's supplemental affidavit which was filed with RJM's motions for summary judgment. *See* dkt 28, Ex. I; dkt 38, Ex. I.

[7] Arguably, paragraphs 2(c) and 9 of the Asset Purchase Agreement, when read together, also reflect RJM's maintenance of an internal policy to cease all collection efforts after learning that an account was in bankruptcy. *See* Def.'s Am. Mem. Supp. Summ. J. at 8-9. However, the Court cannot conclude that Ross' attorneys' failure to interpret the Agreement to reflect such a procedure warrants the imposition of sanctions in this case, particularly given that RJM's

Nor was RJM's counsel overly forthcoming about providing evidence to support several of the other procedures maintained by RJM. For instance, it was not until March 2005 that Ross' attorneys obtained the Asset Purchase Agreement detailing RJM's agreement with Fingerhut not to transfer any accounts in bankruptcy and to notify RJM if it received notice of any claim that might affect RJM (RJM's first and second procedures). Similarly, Ross' attorneys had to make repeated requests for evidence supporting RJM's fifth procedure, namely, its reliance on Phin Solutions to conduct daily bankruptcy searches on its behalf. RJM's attorney referenced that procedure (under the incorrect name "Finn Solutions") as early as her November 16, 2004 letter, yet that letter failed to include the affidavit cited in support of it. (Def.'s Mot. Ex. A at 2; *id.* Ex. C.) After Ross' attorney pointed out the omission, RJM's attorney submitted another affidavit on the issue (by a different person), but that affidavit made no mention of Phin Solutions (or "Finn Solutions"). (*Id.*) Nor were Ross' attorneys able to locate the search firm through their own research, as the name initially provided to them, "Finn Solutions," was incorrect. Thus, in the end, it was not until several months after RJM's counsel first referenced RJM's procedure of relying on Phin Solutions to conduct bankruptcy searches for RJM that Ross' counsel was provided with an affidavit by Phin Solutions attesting to that fact.

In addition, Ross' attorneys never were provided with a copy of the first affidavit referenced in the November 16, 2004 letter (that of Mr. Shah), despite their requests for it. In fact, RJM seems to have changed its story over time about whether the affidavit ever existed. *See* Def.'s Mot. at 3 (stating that Mr. Shah "originally provided his affidavit," and that its omission from the November 16, 2004 letter was "inadvertent[]"); *id.* Ex. G at 3-4 (indicating

---

counsel apparently did not advise Ross' attorneys of such an interpretation prior to Ross' filing of her motion for summary judgment. *See, e.g.*, Def.'s Mot. Ex. G at 2. Indeed, in its LR 56.1 Statement, RJM does not even cite to the Agreement in support of its internal policy. *See* dkt 37, Ex. A ¶ 8.

that such explanation had been provided in a previous letter). *But see* Def.'s Reply at 11 n. 2 (stating that Mr. Shah's affidavit was never completed and does not exist).

In summary, although Ross' attorneys were given notice of RJM's anticipated bona fide error defense as early as RJM's November 16, 2004 letter, the evidence submitted in support of that defense was not forthcoming, and it cannot be said that Ross' attorneys, who were dependent on RJM for much of that evidence, were shy in asking for it. Most importantly, the evidence regarding RJM's procedures that was disclosed prior to the filing of Ross' motion for summary judgment was distinguishable from the evidence regarding the procedures employed by the defendant in *Hyman*. As discussed above, at the time Ross filed her motion for summary judgment, her attorneys had not been provided with Mr. Matte's supplemental affidavit explaining RJM's third procedure – which was one of the two procedures relied upon in *Hyman*. In addition, in *Hyman*, the court noted the fact that only .01% of the accounts referred to the debt collector were found to have been in bankruptcy. 362 F.3d at 967-968. In this case, no evidence was provided on that point. Because the bona fide error defense is based on the existence of "reasonable" procedures, Ross' attorneys sought evidence regarding all of the procedures employed by RJM in order to assess whether, cumulatively, they were reasonably adopted to prevent collection of a debt in bankruptcy. Based on the foregoing, the Court cannot conclude that the evidence Ross' attorneys had regarding RJM's bona fide error defense prior to the filing of Ross' motion for summary judgment should have led Ross' attorneys to conclude that Ross' claim was clearly without a plausible legal or factual basis and lacking in justification, such that their pursuit of the claim was unreasonable and vexatious.

RJM also argues that Ross' attorneys knew Ross' claims were without merit because her bankruptcy petition contained multiple misrepresentations, inaccuracies and omissions that caused RJM not to receive Ross' bankruptcy notice. Plaintiff Delisa Ross claimed that RJM

violated her rights under the FDCPA by attempting to collect a debt owed by "Lisa Ross," although "Lisa Ross" was not a name listed on Ross' bankruptcy filings, and her bankruptcy filings contained other inaccuracies about the debt. A question could have been raised about whether the debt was ever actually discharged, but RJM never raised that question except in a footnote to one of its briefs on summary judgment. *See Ross*, 2006 WL 752953 at *5 n. 10. Instead, upon receipt of Ross' claim, RJM denied that it had received notice of the discharge, which necessarily implicated what procedures RJM had in place to get information, and RJM started down the path of demonstrating its bona fide error defense. The parties then became entangled in all of the confusion about RJM's various asserted procedures, as illustrated by the correspondence discussed above. Ross' attorneys should have considered whether their client's own errors in her bankruptcy filings prevented a discharge of the debt or at least contributed to the fact that she received the post-bankruptcy collection letter directed to "Lisa Ross" notwithstanding the creditor's reasonable procedures. But in light of RJM's decision not to contest whether the debt had been discharged, effectively a tacit admission that the letter violated the FDCPA, Ross' attorneys should not be sanctioned under § 1927 for continuing to pursue the case to see if RJM could establish a defense.

### 2. Duty of Candor

RJM argues that Ross' attorneys also violated § 1927 by breaching their duty of candor. (Def.'s Mot. at 9-12.) The Seventh Circuit has observed that lawyers owe courts a duty of candor. *See Schmude v. Sheahan*, 420 F.3d 645, 651 (7th Cir. 2005); *Beam v. IPCO Corp.*, 838 F.2d 242, 249 (7th Cir. 1988). *See also* Local Rule 83.53.3 (regarding attorney conduct before a tribunal). However, the Seventh Circuit did not impose sanctions in either of those cases. In *Beam*, the court criticized an attorney whose brief cited an excerpt from a minority opinion but

did not mention that the majority opinion rejected that position. Although the Seventh Circuit declined to impose sanctions, the court stated that "[m]isrepresentations of controlling law could postpone resolution of the real issues, . . . 'unreasonably multiplying the proceedings' . . . ." 838 F.2d at 249 n. 5. In *Schmude*, the court reversed the imposition of sanctions on attorneys who were "not being candid about matters they had no duty to disclose." 420 F.3d at 651.

Significantly, RJM does not bring its motion under Rule 11, and, therefore, the standard to be applied is not the standard set out in Rule 11.[8] Instead, the issue is whether Ross' attorneys engaged in activity that the Seventh Circuit suggested in *Schmude* or *Beam* might be grounds for sanctions under § 1927, which is the misrepresentation of controlling law or misrepresentation of factual matter that the attorney has a duty to disclose. Notably, the duty of candor discussed in *Schmude* and *Beam* is owed to *the court*, and, accordingly, the sanctionable violation of that duty must be a misrepresentation to the court. Neither of the instances of conduct by Ross' attorneys cited by RJM constitutes a breach of the duty of candor to the court so as to justify the imposition of sanctions pursuant to § 1927.

RJM's first argument is that Ross' attorneys misrepresented controlling law by alleging in the complaint and arguing in briefs that RJM should have learned about Ross' bankruptcy by conducting an adequate bankruptcy search, thus, in RJM's view, "disingenuously" implying that the FDCPA requires the independent verification of a plaintiff's debts, contrary to the *Hyman* case. (Defs.' Mot. at 10, 11; Def.'s Reply at 2-3, 4-5.) However, Ross' attorneys' briefs did not misrepresent the applicable law as did the brief in *Beam*. Both RJM and Ross argued their

---

[8] Rule 11(b)(2) requires that "the claims, defenses, and other legal contentions" in any filed paper be "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."

-12-

respective interpretations of the *Hyman* decision. Unsuccessful argument is not the equivalent of misrepresentation.

RJM also argues that Ross' attorneys violated their duty of candor by "making disingenuous arguments," for example, Ross' argument in her motion for summary judgment that "RJM has produced no admissible evidence that it had any reasonable procedures in place . . . ." (Def.'s Mot. at 10, 11) (citing dkt 24 at 6). In moving for summary judgment, Ross argued that RJM's evidence and affidavits were deficient and inadmissible, and urged the Court to disregard them. *See Ross*, 2006 WL 752953 at *7-8. Although that argument was ultimately unsuccessful, and the Court found that RJM had produced admissible evidence regarding its procedures, that argument did not constitute a misrepresentation of fact in violation of the duty of candor.

There is no basis to impose sanctions under § 1927.

**B.     15 U.S.C. § 1692k(a)(3)**

Section 1692k(a)(3) provides that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."

RJM claims that Ross' attorneys brought the lawsuit in bad faith and for purposes of harassment. (Def.'s Mot. at 12.) RJM's argument is based on its position that Ross' attorneys knew the complaint lacked merit but filed it and continued to advocate Ross' claims to the Court anyway. (*Id.* at 12-13.) In light of the foregoing discussion, Ross' attorneys' pursuit of Ross' claim cannot be considered evidence of bad faith or harassment.

In its Reply, RJM asserts the additional argument that Ross' attorneys filed the suit to retaliate against Mr. Matte personally. (Def.'s Reply at 12, 14.)[9] Ross has moved to strike that argument because it was not raised until the Reply. (Pl.'s Mot. Strike.) [Dkt 82.] Ross' motion to strike is granted. Arguments not raised in opening briefs are waived. *See Wilson v. O'Leary*, 895 F.2d 378, 384 (7th Cir. 1990) (stating that the Seventh Circuit has consistently refused to consider arguments withheld until the reply brief); *Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005) (same). However, even if the argument were considered, the Court would not find it persuasive. The fact that Ross' attorneys were involved in another suit in which Mr. Matte provided evidence does not establish that Ross' suit was brought for retaliation. Thus, Ross' attorneys are not liable for fees and costs under § 1692k(a)(3).

## II.     Ross' Objection to RJM's Bill of Costs

On April 18, 2006, RJM submitted its Bill of Costs in the amount of $1,155.85. [Dkt 66.] Ross objects to two of those cost items: (1) costs for court reporting services provided by Jensen Reporting dated November 3, 2005 in the amount of $534.40 for the deposition of Ross, and (2) costs for reporting services of Pamela Warren on March 31, 2005 in the amount of $88.00 for a transcript of court proceedings on March 24, 2005. (Pl.'s Obj. ¶¶ 3-5.) With respect to the Ross deposition cost, Ross argues that it was not necessary for RJM's bona fide error defense and was not utilized in court filings. (*Id*. ¶ 4.) With respect to the transcript of proceedings on March 24, Ross objects to paying $88.00, asserting that she paid only $17.60 for that transcript and the transcript was unnecessary and not used in RJM's pleadings. (*Id*. ¶ 5.)

---

[9] Mr. Matte had provided an affidavit in a prior FDCPA case filed by Ross' attorneys which was later dismissed and which served as the basis for sanctions against Ross' attorneys. (Def.'s Reply at 12-13) (citations omitted).

"Costs are recoverable if they are authorized by the statute and are both reasonable and necessary to the litigation." *Petersen v. Gibson, et al.*, 2005 U.S. Dist. LEXIS 21364 at *17 (N.D. Ill. Sept. 27, 2005) (citing *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000)). Section 1920(2) permits costs to be paid to a prevailing party for fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case. The determination of necessity "must be made in light of the facts known at the time of the deposition, without regard to intervening developments that render the deposition unneeded for further use." *Mother and Father, et al. v. Cassidy, et al.*, 338 F.3d 704, 712 (7th Cir. 2003). So long as depositions are not frivolous, they are a legitimate cost even if they are not used in the proceedings. *Illinois v. Sangamo Construction Co.*, 657 F.2d 855, 867 (7th Cir. 1981). The Court concludes that both of those costs satisfy the definition of necessity in this case, and RJM is entitled to recover its costs for those services. Ross' objection to the Bill of Costs is denied.

## CONCLUSION

RJM has not demonstrated that Ross' attorneys' actions rise to the level of warranting § 1927 sanctions, or that it is entitled to fees and costs under § 1692k(a)(3). Thus, RJM's motion for sanctions is denied. Ross' objection to RJM's Bill of Costs is likewise denied, resulting in an award of costs to RJM in the amount of $1,155.85 to be taxed by the Clerk of Court against Ross. Ross' motion to strike is granted.

**IT IS SO ORDERED.**

*/s/ Geraldine Soat Brown*

Geraldine Soat Brown
United States Magistrate Judge

December 4, 2006